YAGER v. YAGER.

1. APPEAL AND ERROR—DE NOVO REVIEW—ANNULMENT OF MARRIAGE.
   Since a suit to annul a marriage is a chancery case, review thereof by the Supreme Court is *de novo*.

2. MARRIAGE—ANNULMENT—FRAUD—PREGNANCY.
   A marriage contract may be annulled where the marriage was induced by the fraudulent representation of the wife that the husband was responsible for her pregnancy when in fact the pregnancy was by another man (3 Comp. Laws 1929, §§ 12724, 12725).

3. SAME—ANNULMENT—FRAUD—EVIDENCE.
   In suit to annul marriage, evidence raised question of fact as to whether defendant wife had induced plaintiff to marry her by fraudulent misrepresentations that he was responsible for her pregnancy and established the falsity of her representations (3 Comp. Laws 1929, §§ 12724, 12725).

4. SAME—ANNULMENT—PREGNANCY—ANTENUPTIAL SEXUAL RELA-
TIONS.

Antenuptial sexual intercourse does not bar a husband from hav-
ing annulment of the marriage if the marriage was induced
by the fraudulent misrepresentation that he was responsible
for the pregnancy when in fact the pregnancy was by another
man (3 Comp. Laws 1929, §§ 12724, 12725).

5. BASTARDS—PRESUMPTION AS TO LEGITIMACY OF CHILDREN—REBUT-
TAL—INCOMPETENCY OF HUSBAND—NONACCESS.

A child born at any time during wedlock is presumed a legitimate
issue; but this may be rebutted by showing the husband incom-
petent, or that he had no access to the mother, or was absent
during the period at which the child must have been begotten.

6. MARRIAGE—ANNULMENT—FRAUD—CHILDREN AS PARTIES—STAT-
UTES—CONSTITUTIONAL LAW.

Statutes providing that annulment of a marriage may be pro-
cured where the consent of one of the parties was obtained by
fraud are not unconstitutional for failing to require that chil-
dren of the parties be made defendants (3 Comp. Laws 1929,
§§ 12724, 12725).

7. EVIDENCE—RECORD MADE IN REGULAR COURSE OF BUSINESS—HOS-
PITALS.

Hospital record showing child's weight, length, condition and
date of birth was properly admissible in evidence in husband's
suit for annulment of marriage because of fraudulent mis-
representation as to child's paternity, under statute pertaining
to records made in the regular course of business (3 Comp.
Laws 1929, §§ 12724, 12725; § 14207, as amended by Act
No. 15, Pub. Acts 1935).

8. MARRIAGE—ANNULMENT—FRAUD—HOSPITAL RECORD—OTHER EVI-
DENCE.

In husband's suit for annulment of marriage because of wife's
fraudulent misrepresentation that he was responsible for her
pregnancy, admission of hospital record as to date of birth
and size and physical condition of child was not prejudicial
where there was other evidence establishing such facts (3 Comp.
Laws 1929, §§ 12724, 12725; § 14207, as amended by Act
No. 15, Pub. Acts 1935).

9. WITNESSES—PRIVILEGED COMMUNICATIONS—PHYSICIANS AND SUR-
GEONS—CHILDBIRTH—ANNULMENT OF MARRIAGE.

Testimony of physician who had attended defendant at birth of
her child as to its length and condition at time of birth after

he had consulted hospital records was not inadmissible, in husband's suit for annulment on ground of fraudulent misrepresentation that he was the child's father, because barred by statute forbidding a doctor from disclosing information acquired while attending a patient in his professional character that was necessary to enable him to prescribe or treat the patient as such testimony did not disclose such information (3 Comp. Laws 1929, §§ 12724, 12725; § 14207, as amended by Act No. 15, Pub. Acts 1935; § 14216).

10. MARRIAGE—ANNULMENT—FRAUD—OPINION EVIDENCE—DURATION OF PREGNANCY.

Testimony of physician, who had delivered over 1,000 babies and who had been called as an expert, that child of stated weight and length was a full-term baby and not premature as defendant mother had claimed was admissible in husband's suit for annulment because defendant had procured marriage through fraudulent misrepresentation that he was responsible for her pregnancy (3 Comp. Laws 1929, §§ 12724, 12725).

11. SAME—ANNULMENT—FRAUD—PARTIES—GUARDIAN AD LITEM.

Where defendant mother in suit for annulment contested charge that the marriage was induced by her fraud and misrepresentation, the appointment of a guardian *ad litem* for the child was not necessary to a proper determination of the issues involved although the court had authority to make such appointment if it had been necessary to protect the rights of the child (3 Comp. Laws 1929, §§ 12724, 12725).

12. SAME—ANNULMENT—JURISDICTION—SERVICE ON PROSECUTING ATTORNEY.

While the statute requires service of summons upon the prosecuting attorney in divorce proceedings, such service is not required in annulment proceedings in order that a court may have jurisdiction (3 Comp. Laws 1929, §§ 12724, 12725; § 12764, as amended by Act No. 44, Pub. Acts 1931).

13. SAME—ANNULMENT—FRAUD—PATERNITY OF CHILD.

In husband's suit for annulment of marriage wherein it appears that child born 50 days after marriage was a full-term baby but that plaintiff had not had access to defendant for period between 6 and 13 months before delivery, determination was proper that plaintiff was not the father of the child as defendant had represented and that the marriage had been procured by her fraud (3 Comp. Laws 1929, §§ 12724, 12725).

14. SAME—COSTS—ANNULMENT.

No costs are allowed upon wife's appeal on affirmance of decree
granting annulment of marriage (3 Comp. Laws 1929,
§§ 12724, 12725).

Appeal from Sanilac; Boomhower (Xeno-
phon A.), J. Submitted October 3, 1945. (Docket
No. 9, Calendar No. 43,032.) Decided January 7,
1946.

Bill by Grant Yager against Frances Yager for
annulment of marriage because of fraud. Decree
for plaintiff. Defendant appeals. Affirmed.

*Charles W. Rigney,* for plaintiff.

*Paterson & Paterson,* for defendant.

STARR, J. Defendant appeals from a decree an-
nulling her marriage to plaintiff. These young peo-
ple, both residents of Michigan, first had sexual re-
lations in the early part of September, 1942.
Thereafter, on September 10th, plaintiff was in-
ducted into the United States army and was sta-
tioned at an army camp in Texas. They did not see
each other again until the early part of April, 1943,
when plaintiff returned to Michigan on a furlough.
At this time they became engaged to be married, and
on April 8th they again had sexual relations. He
returned to camp, and in June defendant advised
him by letter that she was pregnant as a result of
their relations. Plaintiff came home on furlough,
and they were married August 19, 1943. He re-
turned to camp, and on October 8th defendant gave
birth to a child in the Port Huron General Hospital.

On November 30, 1943, plaintiff filed bill of com-
plaint to annul the marriage, alleging that his con-

sent to the marriage was obtained by defendant's false and fraudulent representation that she was pregnant as a result of their sexual relations, and that he had not cohabited with her subsequent to his discovery of said fraud.* Defendant answered, denying the charge of fraud and misrepresentation and by cross bill asked for a divorce on the ground of extreme and repeated cruelty. However, at the time of trial she withdrew the cross bill. Subsequent to trial, but prior to the entry of decree, defendant filed motion for the appointment of a guardian *ad litem* for the child, which motion was denied. The case was tried, and the trial judge determined that plaintiff was not the father of the child and that he had been induced to marry defendant by her false and fraudulent representation. A decree was entered annulling the marriage. Defendant appeals, and, this being a chancery case, we review *de novo*.

Defendant denied having had sexual relations with any man other than plaintiff and claimed that the baby was prematurely born. It was admitted that her pregnancy did not result from her sexual relations with plaintiff in September, 1942. It was also admitted that they did not again have sexual relations until April 8, 1943, which was only six months prior to the birth of the child on October 8th. At birth the child was 19 inches long and weighed 6½ pounds. Dr. Patterson, who attended defendant at the time of delivery, testified:

"*Q.* Was there anything unusual about the baby you delivered to Mrs. Yager?

"*A.* No, I noticed nothing unusual. * * *

"It was relatively an easy delivery. * * *

"The usual period of gestation is approximately nine months. * * * I considered the baby that I delivered to Mrs. Yager a full-term baby. * * * The principal facts that you consider is * * *

---

* 3 Comp. Laws 1929, §§ 12724, 12725 (Stat. Ann. §§ 25.82, 25.83).

the length and weight of the baby. A full-term baby can be all the way from 5½ to 8½ or possibly 9 pounds. * * * The usual length of a new-born baby is from 18 to 20 inches, and this baby was 19 inches. I don't think that baby could be over six weeks or a month premature. * * *

"The baby I delivered to Frances Yager appeared to be a normal baby and not weak."

In response to a hypothetical question as to whether or not a child of the description of that born to defendant could have been conceived in April, 1943, Dr. Tweedie, who had attended the delivery of over 1,000 babies, testified:

"That description fits a full-term baby which is 280 days. The time limit which you have given there is six months, which is approximately 180 days, therefore, that baby could not be conceived the first week in April and be of that description. * * *

"The average weight of a premature child born at six months is three and a half pounds."

The law is established in this State that a marriage contract may be annulled where the marriage was induced by the fraudulent representation of the wife that the husband was responsible for her pregnancy, when in fact the pregnancy was by another man. *Yanoff* v. *Yanoff,* 237 Mich. 383; *Gard* v. *Gard,* 204 Mich. 255 (11 A. L. R. 923). In the instant case the testimony presents a question of fact as to whether or not defendant induced plaintiff to marry her by false and fraudulent representations. In June, 1943, she informed plaintiff that she was pregnant as a result of their sexual relations in April, and in reliance upon this representation plaintiff married her. He testified in part:

"I came home at this time (August, 1943) particularly because Miss Martin (defendant) had told

me that she was pregnant and that the child she was going to have was mine. * * * I got this word by letter she wrote. * * *

"After I arrived back in Michigan I had a talk with Frances Martin. * * * She said that she was going to have a baby and she said definitely that it was mine. * * * She said she had already made the necessary arrangements; she had the information on how to get married, when, where and how. * * * I married Frances Martin on my furlough in August, 1943, because she was pregnant and going to have a child and she claimed it was mine. * * *

"Our trouble is due to the fact that the child was born in less than nine months after April, 1943, and it is not my child. * * *

"Q. On April 13th when you related you have [had?] procured and gave a diamond ring to the then Frances Martin, had you known then, at that time that she was several months pregnant by another man, would you have given her that ring and become engaged to her?

"A. No, sir."

In *Yanoff* v. *Yanoff, supra,* we held that in an action for annulment of marriage, neither the husband nor wife could testify as to their antenuptial sexual relations, and that proof of such relations could only be made by other evidence. In the present case there was testimony other than that of the parties which clearly established that plaintiff was out of the State of Michigan and did not see defendant between September, 1942, and April, 1943. The record shows that the child born October 8, 1943, was a full-term, nine-months baby. Therefore, it could not have been conceived when the parties had sexual relations in April of that year. Defendant's representation that plaintiff was the father of her child was clearly false. In affirming the annulment of a marriage on the ground of the wife's false representa-

tion of pregnancy by the husband, in *Yanoff* v. *Yanoff, supra,* we said, pp. 386, 387:

"In the *Gard Case* (*Gard* v. *Gard, supra*) this court decided that antenuptial sexual intercourse does not bar a husband from having annulment of the marriage, if the marriage was induced by the fraudulent representation that he was responsible for the pregnancy, when in fact the pregnancy was by another man. \* \* \*

"While the law recognizes a status from marital cohabitation, affecting the parties, progeny and society, \* \* \* and leaves them to bear the consequences of ill-advised judgment and want of consideration, it no longer raises an irrebuttable presumption, in bar of relief by annulment of a marriage procured by the intentional fraud of saddling upon a selected victim a child carried in the schemer's womb and begotten by another. Marriage contracts may be annulled by judicial pronouncement for fraud perpetrated by one of the parties thereto on the other."

In the *Yanoff Case* we quoted with approval from the syllabus of *Wallace* v. *Wallace,* 137 Iowa, 37 (114 N. W. 527, 14 L. R. A. [N. S.] 544, 15 Ann. Cas. 761, 126 Am. St. Rep. 253), as follows:

"A child born at any time during wedlock is presumed a legitimate issue; but this may be rebutted by showing the husband incompetent, or that he had no access to the mother, or was absent during the period at which the child must have been begotten."

3 Comp. Laws 1929, §§ 12724, 12725, provide for the annulment of a marriage where the consent of one of the parties was obtained by fraud. Defendant's contention, that these statutes are unconstitutional because they do not require that the child or children of the parties be made defendants, is without merit.

The hospital record showing the date of birth of the child, its weight, length, and condition at the time of birth, was properly admissible in evidence under 3 Comp. Laws 1929, § 14207, as amended by Act No. 15, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 14207, Stat. Ann. § 27.902). *Harrison* v. *Lorenz,* 303 Mich. 382; *Valenti* v. *Mayer,* 301 Mich. 551; *Gile* v. *Hudnutt,* 279 Mich. 358. In any event, defendant was not prejudiced by the admission of the hospital record because there was other evidence establishing the facts relative to the date of birth and the size and physical condition of the child.

Defendant contends that the testimony of Dr. Patterson, who attended her at the time of the child's birth, was not admissible under 3 Comp. Laws 1929, § 14216 (Stat. Ann. § 27.911), which forbids a doctor from disclosing "any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon." Dr. Patterson testified that he had examined the hospital records, which showed the child's weight and length, and stated that in his opinion it was a full-term baby. This testimony did not disclose information which was "necessary to enable him to prescribe" for defendant and, therefore, was not barred under the above-mentioned statute. *Perry* v. *Hannagan,* 257 Mich. 120 (79 A. L. R. 1127). Furthermore, it should be noted that by letter defendant had given plaintiff full information relative to the birth of the child, its weight, length, and physical condition, and had directed him to write Dr. Patterson for a "report and the truth about it all." The above-quoted testimony of Dr. Tweedie, who was called as an expert witness, was also properly admissible.

Defendant further contends that the trial judge erred in denying her petition for the appointment of a guardian *ad litem* for the child. Although we find no statute requiring such appointment in annulment proceedings, the trial court undoubtedly had authority to make the appointment, if deemed necessary for the protection of the rights of the child. However, in view of the fact that defendant, the child's mother, contested the charge that the marriage was induced by her fraud and misrepresentation, the appointment of a guardian *ad litem* was not necessary to a proper determination of the issues involved.

Defendant also claims that the court was without jurisdiction, because there was no proof of service of summons on the prosecuting attorney under 3 Comp. Laws 1929, § 12764, as amended by Act No. 44, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 12764, Stat. Ann. § 25.121). This statute relates to the service of summons on the prosecutor in divorce proceedings, and we find no statute requiring such service in an annulment proceeding.

We are convinced that the trial judge, who saw and heard the parties and their witnesses, properly determined that plaintiff was not the father of the child and that the marriage was procured by defendant's fraud and misrepresentation. Other questions presented do not require consideration. The decree annulling the marriage is affirmed. No costs allowed.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and NORTH, JJ., concurred.