HACKLEY v HACKLEY

Docket No. 75389. Argued March 5, 1986 (Calendar No. 12). Decided November 24, 1986.

Travis L. Hackley was granted a judgment of divorce in 1974 in the Kalamazoo Circuit Court, Donald T. Anderson, J., from Lynel Hackley following a pro confesso hearing. The judgment stated that two children were born of the marriage, Laura Elisa and Antoine O'Neal, who was born fifteen days before the pro confesso hearing and two and one-half years after the complaint for divorce had been filed. At the hearing, the plaintiff was not permitted to present testimony that he was not the father of Antoine. The plaintiff was ordered to pay support and maintenance for both children. In 1983, Lynel Hackley sought modification of the judgment to increase the amount of support. The plaintiff again alleged that he was not the father of Antoine and sought blood tests to determine the paternity of Antoine. The court, Richard Ryan Lamb, J., ordered blood tests, which indicated that the plaintiff was not the father of Antoine. The Court of Appeals, V. J. BRENNAN, P.J., and R. M. MAHER and HOOD, JJ., ordered the circuit court's order requiring blood tests vacated and dismissed the plaintiff's petition for determination of paternity, holding that because the plaintiff was not permitted to present evidence at the pro confesso hearing that he was not the father of Antoine and that ruling was not appealed, res judicata applied, barring his petition (Docket No. 78402). The trial court thereafter increased total support for both children. The plaintiff appeals.

In opinions by Justice BOYLE, joined by Justices CAVANAGH and RILEY and by Justice BRICKLEY, the Supreme Court *held:*

The plaintiff's petition challenging his paternity is barred.

Justice BOYLE, joined by Justices CAVANAGH and RILEY, stated that a finding of fact in a divorce decree that a child was born of the marriage of the parties establishes the child's paternity. Such a determination, if unappealed, should be given conclusive effect and should hold true even where the rules of evidence have changed between prior and subsequent suits so as to allow the admission of testimony which could conclusively establish that the issue of paternity should have been decided otherwise. Whether an issue was conceded during the trial of

an action should not be a factor in determining the res judicata effect of a prior decision. The rationale in requiring finality in paternity determinations is compelling. In this case, the issue is one of fact. Thus, adoption of the exception to the general rule of preclusion would be inappropriate. The best interests of the child should prevail over any unfairness to the plaintiff that may result by denying his challenge of paternity, raised nine years after entry of the judgment of divorce. The doctrine of res judicata should be applied to bar the plaintiff's attempt to disestablish his paternity.

Justice BRICKLEY, concurring with Justice BOYLE, stated that in this case not only did the plaintiff have an opportunity in the original action to offer proofs regarding his paternity, but he was not precluded at that time from utilizing the same evidence he now wishes to employ. However, whether the issue the plaintiff seeks to relitigate is one of law or fact, the policy considerations articulated by Justice BOYLE are not necessary to the conclusion that the plaintiff cannot prevail.

Affirmed.

Justice LEVIN, joined by Chief Justice WILLIAMS and Justice ARCHER, stated that the doctrine of res judicata does not bar a husband, following a petition for modification of child support provisions in a decree of divorce, from seeking the elimination of support payments that otherwise would become due under the decree for time periods subsequent to filing a petition seeking modification on the ground that he was not the father of the child, where, before entry of the decree, he maintained that he was not the father of the child and was prevented from offering testimony of nonaccess.

*Daudert & Basch* (by *Martin C. Basch*) for the plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Richard A. Santoni,* Assistant Prosecuting Attorney, for Antoine O'Neal Hackley.

BOYLE, J. The opinion for reversal excepting this case from the application of res judicata appears to have two bases: (1) the doctrine of res judicata should not preclude the relitigation of Antoine's

paternity because Travis did not concede the issue at the original divorce proceedings; and (2) the doctrine should not apply because of subsequent changes in the legal climate affecting the evidence admissible on the issue of paternity.

Ordinarily, preclusion is appropriate as to issues defined by application of legal rules to historic facts that were completed by the time of the initial decision, 18 Wright, Miller & Cooper, Federal Practice & Procedure, § 4425, pp 242-264. Even if it is conceded, as the opinion for reversal suggests, that application of the doctrine of res judicata depends upon a weighing of the competing public policy concerns involved, we would conclude that the need for finality as to the paternity determination is compelling and that the doctrine of res judicata bars Travis' attempt to disestablish his paternity of Antoine. Therefore, we would affirm the decision of the Court of Appeals.

I

"The doctrine of res judicata operates to prevent the relitigation of facts and law between the same parties or their privies." *Socialist Workers Party v Secretary of State,* 412 Mich 571, 583; 317 NW2d 1 (1982), citing *Gose v Monroe Auto Equipment Co,* 409 Mich 147, 161; 294 NW2d 165 (1980).

The doctrine of res judicata was judicially created in order to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v McCurry,* 449 US 90, 94; 101 S Ct 411; 66 L Ed 2d 308 (1980). The central goal of the doctrine's application is to "free people from the uncertain prospect of litigation, with all its costs to emotional peace and the ordering of future affairs." 18 Wright, Miller & Cooper, *supra,* § 4403, p 15.

In Michigan, the doctrine of res judicata applies, except in special cases, in a subsequent action between the same parties and " 'not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.' " *Curry v Detroit,* 394 Mich 327, 332; 231 NW2d 57 (1975), quoting *Gursten v Kenney,* 375 Mich 330; 134 NW2d 764 (1965).

A support order arising from a divorce decree constitutes an adjudication of paternity and establishes the defendant's duty of support. *Baum v Baum,* 20 Mich App 68, 74; 173 NW2d 744 (1969). A party cannot withhold a defense to be used in the retrial of a paternity dispute when that defense could have been brought in the prior suit. *Baum, supra;* see *Jacobson v Miller,* 41 Mich 90, 96; 1 NW 1013 (1879). The doctrine of res judicata precludes this from happening. *Baum, supra; Stewart v Stewart,* 91 Mich App 602, 605; 283 NW2d 809 (1979); see also Anno: *Effect, in subsequent proceedings, of paternity findings or implications in divorce or annulment decree or in support or custody order made incidental thereto,* 78 ALR3d 846.

The opinion for reversal excepts the instant case from the general application of res judicata because of the operation of Lord Mansfield's Rule[1] in the trial court. Lord Mansfield's Rule precluded testimony concerning nonaccess by either a husband or wife which would tend to bastardize a child born of the marriage. The presumption that a child born during wedlock is a legitimate issue

---

[1] *Goodright v Moss,* 2 Cowp 591; 98 Eng Rep 1257 (1777).

could be rebutted, however, by testimony from third persons indicating nonaccess. *Yanoff v Yanoff,* 237 Mich 383; 211 NW 735 (1927); *Yager v Yager,* 313 Mich 300; 21 NW2d 138 (1946). In 1977, the rule was abrogated by this Court's decision in *Serafin v Serafin,* 401 Mich 629; 258 NW2d 461 (1977).

The opinion for reversal concludes that Travis did not concede the issue of paternity in the court below and intimates that the operation of Lord Mansfield's Rule precluded Travis from litigating the issue:

> Travis did not concede the issue of paternity. He sought to offer testimony on that issue at the pro confesso hearing, but the court refused to allow him to do so. While his failure to appeal made the decree final and, under the general rule of issue preclusion, the determination of paternity was "conclusive in a subsequent action between the parties," he had not conceded the issue. [*Post,* pp 602-603.]

We agree with our colleagues that Travis did not concede the issue of paternity. They have, however, failed to explain why that fact makes the determination of paternity and support any less final. Lord Mansfield's Rule precluded testimony of the husband and wife as to nonaccess to prove a husband's lack of paternity. It did not preclude *litigation* of the paternity issue. As indicated above, Travis could have offered testimony of third persons as to nonaccess if such testimony were available. See *Yanoff, supra.*

Another reason why our colleagues arrive at this conclusion is to distinguish this case from *Hlady v Wolverine Bolt Co,* 393 Mich 368, 380; 224 NW2d 856 (1975), in which this Court held:

> Plaintiff may not concede an issue, necessarily

determinative of and included in the judgment of this Court, and then, after another has successfully raised the issue she did not wish to contest, ask the Court again for relief. The doctrine of res judicata bars this from happening.

A review of *Hlady*, however, indicates that Hlady's earlier concession of the issue was not the basis for precluding relitigation of the issue in that case. Indeed, the majority decision in *Gose v Monroe Auto Equipment, supra,* 161-162, teaches that the true rationale behind *Hlady*'s holding is the public policy concern requiring finality in workers' compensation adjudications:

> A compensation award represents " 'an adjudication as to the condition of the injured workman at the time it is entered.' " *Theodore v Packing Materials, Inc,* 396 Mich 152, 158; 240 NW2d 255 (1976), citing 58 Am Jur [Workmen's Compensation, § 508]. Disability benefits "are a form of income maintenance for persons whose wage-earning capacity has been suspended or terminated. A claimant's entitlement to such benefits depends on the circumstances at the time of application and payment." *Hlady, supra,* 391 (LEVIN, J., concurring).
>
> The requirement that he present all of his available claims in a single proceeding is consistent with this purpose of adjudicating the worker's needs. The remedial character of the legislation, if affected at all by this rubric, would scarcely be enhanced by a construction which would authorize piecemeal compensation for an injury.

Surely, neither *Hlady* nor any other authority resolves the issue of res judicata on whether a party litigated or conceded the issue.

The opinion for reversal, in footnote 6, attempts at great length to clarify that its decision was not based on the fact that Travis never conceded the

paternity issue.[2] In so doing, it actually opens the door for consideration of concession of an issue as a factor in determining whether res judicata applies. Our colleagues state that

> [w]hether or not as stated in the opinion for affirmance, "Hlady's earlier concession of the issue was not the basis for precluding relitigation of the issue in that case," . . . *Hlady* made a point out of Hlady's concession of the issue. Because *Hlady* emphasized Hlady's concession of the issue, we have noted in the accompanying text that Travis did not concede the issue of paternity. We do not wish to be understood as saying that a person may relitigate an issue that he had an opportunity to contest on the basis that he did not concede the issue. [*Post,* p 603, n 6.]

This creates the impression that nonconcession of the issue may have been a factor in determining the applicability of res judicata. Concession or nonconcession of an issue has never been, and should not now be, a factor in determining the res judicata effect of a prior decision. If our colleagues do not base their decision on plaintiff's nonconcession of paternity, the discussion in footnote 6 and

---

[2] Even if plaintiff's concession or nonconcession of paternity was an issue, we believe that a strong argument can be made that plaintiff did constructively concede the question.

We note that plaintiff was represented by counsel throughout these proceedings and took the judgment of divorce awarded by the court. The record also indicates that, while plaintiff was precluded from testifying regarding paternity of Antoine, he was not precluded from offering other testimony and evidence such as blood tests. See *People v Wiseman,* 63 Mich App 137, 140; 234 NW2d 429 (1975); *Serafin v Serafin,* 67 Mich App 517; 241 NW2d 272 (1976), aff'd 401 Mich 629; 258 NW2d 461 (1977). Yet he made no attempt to do so. The record clearly establishes that, in the face of the court advising that Antoine had to be named in the judgment as a child of the marriage and that the weekly support order for Antoine would be $30, an amount more than twice that for Laura ($13.50), the plaintiff did not offer any other testimony or evidence or request blood tests or a continuance which would allow him time to bring forward testimony and evidence supporting his denial of paternity.

the accompanying text is superfluous at best, as well as obfuscating.

Further, after discussing Hlady's concession, the opinion for reversal does nothing more to distinguish *Hlady.* The reason for that omission is that *Hlady* cannot be distinguished from this case. Both involve a factual determination accompanied by a subsequent change in law. Both involve a party to the prior determination seeking to change the earlier factual conclusion. In both cases, the plaintiff, aggrieved by the factual determination, could have appealed, but did not. The plaintiff in *Hlady* was precluded from relitigating the issue, as should be plaintiff here.

As pointed out earlier, the rationale behind *Hlady* is the public policy of requiring finality in workers' compensation cases. That rationale is as compelling, if not more so, in the highly emotion-charged area of paternity determinations. One contested paternity proceeding is disturbing in itself. To force the party contesting the redetermination to go through that unpleasantness again is unfair, as well as an unnecessary burden on the courts.

The question for present purposes is whether the party seeking to relitigate had the *opportunity* to litigate the issue. The opinion for reversal appears to conclude that Travis did not have an adequate opportunity to litigate the issue of paternity because of the operation of Lord Mansfield's Rule. This conclusion disregards the fact that the only evidence of nonaccess he could not offer was his or Lynel's testimony. Every other manner of proof was available to him. The operation of Lord Mansfield's Rule does not affect the finality of the paternity adjudication because its operation did not preclude the litigation of the paternity issue. See *Thompson v Thompson,* 572 SW2d 761, 763-

764 (Tex Civ App, 1978). To argue that fairness somehow requires relitigation of the paternity question totally overlooks the fact that plaintiff did have a chance to contest the issue but did not, choosing instead to take the divorce decree knowing that Antoine was listed as a child of the marriage, and that he would be required to support the child. It also overlooks the unfairness that would occur to Antoine if the paternity issue were allowed to be relitigated.[3]

II

The scope of the doctrine of res judicata depends upon whether the question arises in a subsequent action between the same parties and upon the same claim or upon a different claim:

> In the former case a judgment upon the merits constitutes an absolute bar to the subsequent action. In the latter case the inquiry is whether the point or question presented for determination in the subsequent action is the same as that litigated and determined in the original action. . . .
> "The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified." [*United States v Moser*, 266 US 236, 241; 45 S Ct 66; 69 L Ed 262 (1924). See also 46 Am Jur 2d,

---

[3] See n 10. The cases cited by our colleagues apparently in support of their conclusion that fairness dictates that the paternity issue be relitigated are not applicable to the case at bar. See n 8.

> Judgments, § 404, pp 571-573; *Jacobson v Miller,*
> *supra,* 93.]

The latter prong of the doctrine of res judicata has been referred to in this Court also as "collateral estoppel." *Jones v Chambers,* 353 Mich 674, 680-681; 91 NW2d 889 (1958), quoting *Partmar Corp v Paramount Pictures Theatres Corp,* 347 US 89, 90-91; 74 S Ct 414; 98 L Ed 532 (1954); *Senior Accountants, Analysts & Appraisers Ass'n v Detroit,* 399 Mich 449; 249 NW2d 121 (1976). In this case, it is denominated as the general rule of issue preclusion.

The present proceeding to cancel child support and determine paternity involves the same parties and the same issue as in the prior divorce proceeding. Because this issue was adjudicated, the general principle of issue preclusion applies.[4] See *Woolf v Woolf,* 10 Mich App 109; 158 NW2d 820 (1968); *Baum, supra.*

Our colleagues would skirt the application of this general rule on the authority of subsections 2(b) and 5(c) of § 28 of the Restatement of Judgments. Initially we note that subsection 5(c) is totally inapplicable to the case at bar. Subsection 5(c) provides in pertinent part:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> * * *
>
> (5) There is a clear and convincing need for a

---

[4] In *Thompson, supra,* the only case located on point, the Texas Court of Civil Appeals reached the same conclusion on the basis of collateral estoppel, the issue-preclusion prong of res judicata which is applied here.

new determination of the issue . . . (c) because
the party sought to be precluded, as a result of the
conduct of his adversary or other special circum-
stances, did not have an adequate opportunity or
incentive to obtain a full and fair adjudication in
the initial action. [Restatement Judgments, 2d,
§ 28(5)(c), pp 273-274.]

According to the commentary, this section
should be applied only where there exists a com-
pelling showing of unfairness, and it should *not* be
applied simply on the basis that the first determi-
nation was patently erroneous. *Id.,* p 284. In this
case, that an erroneous determination was reached
in the first litigation alone is an insufficient basis
for applying the section. Nor has Travis estab-
lished a compelling showing of unfairness. The
facts indicate that Travis had an adequate oppor-
tunity to obtain a full and fair adjudication of the
paternity issue in the original action, but that he
failed to avail himself of that opportunity. Nor is
it apparent why the incentive of Travis to litigate
the issue should be any greater now by reason of
special circumstances than it was at the time of
the original divorce action.[5] While we concede that
Lynel's request for increased child support may
have rekindled Travis' interest in contesting the
paternity finding, we also note that an increase in
child support is not an unforeseeable request.
Under these circumstances we are not compelled
to find that Travis was a victim of unfairness.

We further note that illustration 11 offered by
the opinion for reversal is not germane to this
case. That illustration is in reference to subsection
(4) of § 28, which would except from the general
rule of preclusion those situations where there has
been an intervening change in the party's burden

[5] See n 2.

of persuasion. This case does not concern a change in the burden of persuasion. Travis has now the same burden that he had at the time of the original divorce, that is, to rebut the presumption of paternity by clear and convincing evidence to the contrary. *Serafin, supra.*

We also find that subsection 2(b) is inapplicable to this case. Subsection 2(b) of § 28 of the Restatement of Judgments provides in pertinent part:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> *   *   *
>
> (2) The issue is one of law and . . . (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws . . . . [Restatement Judgments, 2d, § 28(2)(b), p 273.][6]

[6] There is considerable controversy concerning the appropriate cases for application of this exception. See, e.g., 18 Wright, Miller & Cooper, *supra,* § 4425; Restatement Judgments, 2d, § 28, Commentary, pp 285-287. It is reasonably clear from the Restatement that the exception should apply to principles of law formulated in abstract terms which are capable of application to completely separate factual situations. It is also clear that the exception should not apply where two cases present identical issues governed by the same general legal rules and present facts which are indistinguishable as measured by these rules.

Determining whether the exception should apply becomes more difficult where there has been a change in the facts or the rules of law governing the facts. Special reasons may exist making the issue-preclusion aspect of res judicata inappropriate in a particular area of the law or substantial changes may have occurred in the legal climate suggesting a new understanding of the governing legal rules which require a different application.

Tax litigation presents a strong example of an area of law requiring flexibility in the application of issue preclusion where the governing laws have changed and separable facts are at issue. One argument advanced for limiting preclusion in this area is that preclusion might

As explained in the opinion for reversal, the rationale for this exception is that

> [a] rule of law declared in an action between two parties should not be binding on them for all time, especially as to claims arising after the first proceeding has been concluded, when other litigants are free to urge that the rule should be rejected. Such preclusion might unduly delay needed changes in the law and might deprive a litigant of a right that the court was prepared to recognize for other litigants in the same position. [Restatement Judgments, 2d, § 28, comment b, pp 275-276.]

Aside from the earlier expressed reservations regarding our colleagues' decision, we are convinced that they have misapplied this exception to

enable some taxpayers to secure discriminatory advantages. This argument has been advanced also in the area of customs litigation. Another reason justifying the limitation of issue preclusion is the feeling that tax law is so changeable that repose and reliance are impossible, regardless of the application of issue preclusion.

Changes in the legal climate may justify relitigation in other areas of the law, such as civil rights, because of the greater concerns of public interest. However, "[j]ust as broad public interests may ease the way to reconsideration, so important private interests of repose or reliance may require that preclusion apply despite the clearest changes of the legal climate. 18 Wright, Miller & Cooper, *supra,* § 4425, p 263. A good illustration is the case of *United States v Moser, supra,* 242, concerning the status of a retired naval officer to receive certain retirement pay:

> Where, for example, a court in deciding a case has enunciated a rule of law, the parties in a subsequent action upon a different demand are not estopped from insisting that the law is otherwise, merely because the parties are the same in both cases. But a fact, question or right distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law. That would be to affirm the principle in respect of the thing adjudged but, at the same time, deny it all efficacy by sustaining a challenge to the grounds upon which the judgment was based. *A determination in respect of the status of an individual upon which his right to recover depends is as conclusive as a decision upon any other matter.* [Citations omitted, emphasis supplied.]

the general rule of preclusion.[7] By the express language of § 28(2)(b), the issue sought to be relitigated must be one of law. This Court has applied the exception only to unmixed questions of law. See *Socialist Workers Party, supra,* 584-585; *Young v Detroit City Clerk,* 389 Mich 333; 207 NW2d 126 (1973). The issue of paternity cannot be described as a question of law. Recognizing this shortcoming in its analysis, the opinion for reversal has attempted to blur the requirement that the issue be one of law by claiming that, "[a]s stated in *Socialist Workers Party[, supra]* and *Young, [supra,]* a change in law as well as a change in fact may justify reconsideration of a prior adjudication claimed to have continuing operative effect and to govern rights in respect to periods of time commencing after the adjudication."[8] *Post,* p 606.

[7] While we find that our colleagues' application of the exception is incorrect in this case, our opinion should be read only as declining to adopt the exception on the facts and posture presented here. We express no opinion on the validity of the exception as applied to different circumstances.

[8] The opinion for reversal cites two examples gleaned from the Restatement of Judgments which "indicate that the exception to the general rule of preclusion applies although the change of law concerns a factual question, the actor's conduct . . . , or his status . . . ." *Post,* 607, n 11. Neither example supports their position.

The first involves an agency bringing an action against a liquor wholesaler on the ground that the wholesaler violated a statute by selling only to himself. The court dismisses the action, holding that such conduct does not violate the statute. A higher court later determines that such conduct does violate the law. The agency is not precluded from once again bringing an action against the wholesaler.

The second example is similar. A nonprofit organization is denied a tax refund on the basis that it is not exempt as a charity. A higher court later grants a similar organization a charitable exemption. The first organization is not precluded from seeking a charitable exemption.

While illuminating, both examples are distinguishable from this case. Both illustrations involve institutional litigation where application of the change in the law exception is compelled by the need to promote consistency of law application by the institution. Moreover, neither illustration involves a factual determination sought to be relitigated. The parties are not attempting to change facts previously

While that may or may not be true, the fact
remains that *Socialist Workers Party* and *Young*
both involved reconsideration of *legal* conclusions.
The issues in both cases involved questions of
access to the political process. Neither case reliti-
gated or changed factual determinations made
previously. The former case involved relitigation of
the constitutionality of a statute; the latter recon-
sidered a candidate's placement on the ballot in a
mayoral election. In this case, plaintiff seeks to
relitigate a basic factual determination decided in
the prior case. By allowing him to do so, our
colleagues would greatly extend the exception to
the general rule of preclusion from that which was
permitted in *Socialist Workers Party* and *Young*.
Further, our colleagues would implement the Re-
statement of Judgments, § 28(2)(b), in a manner
clearly not intended by its drafters. By its express
language, § 28(2)(b) requires the issue to be one of
law, not fact.[9]

At issue is Travis' status in relation to Antoine
and the rights and obligations that flow therefrom.
A finding of fact in a divorce decree that a child
was born of the marriage of the parties establishes
the child's paternity. Such a determination, if
unappealed, is to be given conclusive effect. This
rule must hold true even where the rules of evi-
dence have changed between the prior and subse-
quent suits so as to allow the admission of testi-

determined. The examples involve the interpretation of the changed
law to the previously determined facts. That is not the posture of this
case. Here plaintiff is attempting to redetermine a fact which he
previously had an opportunity to contest.

[9] We recognize that the distinction between questions of law and
questions of fact is often hazy. Some issues cannot be clearly delin-
eated as straight factual issues or legal issues. Often a question
presented to a court is a mixed question of fact and law. With that in
mind, however, the issue of paternity does not fall on the scale in the
grey area of a mixed question of fact and law, but is clearly a factual
determination. A man either is or is not the father of a child.

mony which could conclusively establish that the issue of paternity should have been decided otherwise. See *Thompson, supra; Johnson v Johnson,* 395 So 2d 640, 641 (Fla App, 1981); cf. *United States v Moser, supra.* See also 50 CJS, Judgments, § 734, p 224; *Ashley v Ashley,* 118 Ohio App 155; 193 NE2d 535 (1962).[10]

Finally, even if we were inclined to adopt the position of the opinion for reversal that res judicata sometimes does not bar relitigation of a factual determination decided in a prior case, we would not adopt the exception here. We believe that the best interests of this child, and all children whose rights will be implicated by the Court's decision today, must prevail over any unfairness that may result to this plaintiff by denying his challenge of paternity raised nine years after entry of his judgment of divorce. Our colleagues are

---

[10] The opinion for reversal cites three cases, *Settle v Beasley,* 309 NC 616; 308 SE2d 288 (1983), *Estate of DeRoy,* 481 Pa 403; 392 A2d 1355 (1978), and *In re Biddle Estate,* 487 Pa 616; 410 A2d 782 (1980), in an effort to support its position. All of these cases are significantly distinguishable from the case at bar.

In *Settle,* the prior litigation was between the county child support enforcement agency and the putative father. In a different action on behalf of the child the issue of paternity was not precluded from litigation because the child, due to differing interests and incentives, was held not to be in privity with the county in the original action.

It is well-established in Michigan that a prerequisite for issue preclusion is that the former adjudication must have been between the same parties or their privies. *In re Kozak,* 92 Mich App 579, 581; 285 NW2d 378 (1979); *Curry v Detroit,* 394 Mich 327, 331; 231 NW2d 57 (1975). In the case at bar, this prerequisite is not in dispute. Travis is the same party that litigated the paternity issue in the prior divorce action.

In *Biddle, supra,* 621, and *DeRoy, supra,* 410, the courts allowed the adopted child to relitigate the issue of heirship on the basis of the well-established rule in Pennsylvania that "a rule of law made in the distribution of a portion of an estate is not binding upon a court in a subsequent adjudication relating to another portion." While the predecessor to § 28 of the Restatement of Judgments was also used in both cases to justify reopening of the litigation, we note that the courts used the exception to fulfill the presumed intent of the testator not to exclude adopted children and to establish a legal relationship, not defeat it, as in the case at bar.

of the opinion that Antoine will not be adversely affected by its decision since plaintiff has never exercised visitation rights and blood tests appear to show he is not the father. *Post,* p 610. They state that plaintiff's child support payments do no more than "preserve a facade of legitimacy." *Id.* By this statement, they ignore the very real possibility that the child will suffer both financially and psychologically.[11]

There is no area of law requiring more finality and stability than family law: "Public policy demands finality of litigation in this area to preserve surviving family structure." *Ex parte Hovermale,* 636 SW2d 828, 836 (Tex Civ App, 1982); *McGinn v McGinn,* 126 Mich App 689, 693; 337 NW2d 632 (1983).

Divorce, like marriage, is of concern not merely to the immediate parties. It affects personal rights

[11] Our colleagues note the enactment of 1986 PA 107, MCL 722.714; MSA 25.494, which extends the statute of limitations for paternity proceedings until the child reached eighteen years of age. The implication of this, of course, being that Lynel Hackley has an avenue available to her to obtain financial support from Antoine's biological father. Taking plaintiff's allegations as true, that the biological father is known and participating somewhat in Antoine's upbringing, we still reject our colleagues' contention that Antoine will not be adversely affected by its decision. A paternity action against the biological father is likely to be costly and a drain on Lynel Hackley's resources. Further, in a vast majority of cases, the biological father or his whereabouts may be unknown. The new paternity statute of limitations would be unavailing in those cases.

Finally, we disagree with our colleagues that their decision will not adversely affect Antoine because plaintiff has never acknowledged paternity or exercised visitation rights. They, while viewing their decision as merely piercing the "facade of legitimacy," neglect to take into account the potential for embarrassment and humiliation that a determination of paternity may have on the delicate psyche of a child. Even in this case, such a proceeding is bound to have some effect on the child as well as the household in which she lives. Further, the possibility for an adverse effect in other cases is quite large. Where a man who has participated in the child's upbringing and, generally, comported as the father, seeks to redetermine his paternity, the result is potentially devastating to a child who had considered the man to be the father.

of the deepest significance. It also touches basic interests of society. Since divorce, like marriage, creates a new status, every consideration of policy makes it desirable that the effect should be the same wherever the question arises. [*Williams v North Carolina*, 325 US 226, 230; 65 S Ct 1092; 89 L Ed 1577 (1945).]

There is no more forceful example of the rationale underlying the requirement of finality of judgments than the chaos and humiliation which would follow from allowing former husbands to challenge, long after a final judgment has been entered, the legitimacy of children born during their marriages.

We would affirm the decision of the Court of Appeals.

CAVANAGH and RILEY, JJ., concurred with BOYLE, J.

BRICKLEY, J. (*concurring*). I concur with the result reached in Justice BOYLE's opinion because I agree that the test to be applied is whether the plaintiff father had the "opportunity" to prove paternity in the pre-Lord Mansfield's Rule action. He had not only the opportunity but also was not precluded from utilizing the same evidence that he wishes to now employ.

I write separately because I am not prepared to accede to the analysis of whether the issue to be relitigated is one of law or fact—also, it is not necessary to my conclusion that the plaintiff cannot prevail.

Additionally, I do not necessarily agree with the policy considerations articulated in Justice BOYLE's opinion.

LEVIN, J. The question presented is whether the

doctrine of res judicata precludes a court from reconsidering and changing, following this Court's decision in *Serafin v Serafin*, 401 Mich 629; 258 NW2d 461 (1977), abrogating "Lord Mansfield's Rule," a determination in a decree of divorce that the husband was the father of a child conceived during the marriage and a provision requiring him to pay child support. We would hold that reconsideration and change is not precluded.

I

Travis Leroy Hackley filed a complaint for divorce against Lynel Hackley in November, 1971. A pro confesso hearing was held over two and one-half years later on August 15, 1974, and a judgment of divorce was entered on August 26, 1974. The judgment of divorce stated that there were two children of the marriage, Laura Elisa Hackley, born February 1, 1970, and Antoine O'Neal Hackley, born August 1, 1974, fifteen days before the pro confesso hearing and over two and one-half years after the complaint for divorce had been filed.

At the pro confesso hearing, Travis stated that Antoine was not his child. The court responded that he was "not permitted to give testimony along those lines."

The judgment of divorce directed Travis to pay $30 for the support and maintenance of Antoine and $13.50 for Laura Elisa, for a total of $43.50, each week.

Lynel filed a petition for modification of the judgment of divorce to increase the amount of support in February, 1983. Travis answered in March, 1983, alleging that he is not the father of Antoine, that Antoine was conceived while the proceedings for divorce were pending and the par-

ties were separated, and that Lynel had acknowledged to him on a number of occasions that he is not the father of Antoine. In April, 1983, Travis filed a petition to determine whether he was the father of Antoine and for blood tests that referred to this Court's decision in *Serafin.*

In *Serafin,* this Court reconsidered Lord Mansfield's Rule[1] which barred testimony concerning nonaccess by either a husband or wife, and concluded that the "veil of incompetency imposed upon a husband and wife by the rule" was lifted and either could testify on the issue of legitimacy of a child conceived during the marriage. The Court added that the child would still be protected by a "strong, though rebuttable, presumption of legitimacy" and that "clear and convincing evidence must be given" to rebut the presumption.[2]

Subsequent decisions of the Court of Appeals have differed on whether *Serafin* precludes reconsideration or modification of a provision for child support in a decree of divorce entered before *Serafin* was decided.[3]

The circuit court in September, 1983, ordered blood tests which indicated quite conclusively that Travis was not Antoine's father. After the test results were made known, the Court of Appeals granted Antoine's application for leave to appeal from the order requiring the blood tests, peremptorily vacated that order, and dismissed Travis' petition for determination of paternity. The Court explained that the concise statement of facts submitted in conjunction with the application stated that Travis was not allowed at the pro confesso hearing on August 15, 1974, to present testimony

[1] *Goodright v Moss,* 2 Cowp 591; 98 Eng Rep 1257 (1777).

[2] *Serafin, supra* at 635-636.

[3] See *Thompson v Thompson,* 112 Mich App 116; 315 NW2d 555 (1982); *Stewart v Stewart,* 91 Mich App 602; 283 NW2d 809 (1979).

that he was not the father of Antoine. "No appeal having been taken from that ruling, res judicata applies and therefore bars plaintiff's petition of April 1, 1983, for determination of paternity." *Hlady v Wolverine Bolt Co,* 393 Mich 368, 380; 224 NW2d 856 (1975).

Following receipt of the order of the Court of Appeals, the circuit court increased the total support for both minor children to $108 per week, retroactive to February 11, 1983.

This Court granted leave to appeal from the order of the Court of Appeals dismissing the petition for determination of paternity. Travis' separate appeal from the circuit court order increasing the child support is pending in the Court of Appeals.

II

In *Hlady,* this Court ruled that a worker who had received specific loss benefits for amputation of four fingers, and who this Court had ruled had not suffered the loss of the industrial use of her hand, could not, eighteen years later, after a change by judicial decision in the construction of the statute, apply for general disability benefits. In so ruling, this Court said that Hlady could not "concede an issue, necessarily determinative of and included in the judgment of this Court, and then, after another has successfully raised the issue she did not wish to contest, ask the Court again for relief. The doctrine of res judicata bars this from happening."[4] The Court added that apart from the doctrine of res judicata the one-year-back rule of the workers' compensation act barred an award of further benefits to Hlady.

---

[4] *Hlady, supra* at 380.

Travis did not concede the issue of paternity. He sought to offer testimony on that issue at the pro confesso hearing, but the court refused to allow him to do so. While his failure to appeal made the decree final and, under the general rule of issue preclusion, the determination of paternity was "conclusive in a subsequent action between the parties,"[5] he had not conceded the issue.[6]

The general rule of issue preclusion is subject to exceptions as was recognized by this Court in *Socialist Workers Party v Secretary of State,* 412 Mich 571, 584; 317 NW2d 1 (1982). There, this Court held that, although the Socialist Workers Party had unsuccessfully challenged in the federal court the constitutionality of a Michigan statute which denied it access to the ballot, because of a subsequent decision of the United States Supreme Court changing the applicable legal context for decision, relitigation of the constitutionality of the statute was not precluded. In so holding, the Court

[5] Restatement Judgments, 2d, § 27, p 250.

[6] We agree with the opinion for affirmance, *ante,* p 586, that Travis' failure to concede the issue of paternity is not determinative of whether the circuit court may reconsider and change the provisions of the divorce decree that Travis was the father and requiring him to pay child support.

This Court in *Hlady, supra* at 380, said, however, that Hlady could not "*concede an issue,* necessarily determinative of and included in the judgment of this Court, and then, after another has successfully raised the issue she did not wish to contest, ask the Court again for relief." (Emphasis supplied.) Whether or not, as stated in the opinion for affirmance, "Hlady's earlier concession of the issue was not the basis for precluding relitigation of the issue in that case," *ante,* p 587, *Hlady* made a point out of Hlady's concession of the issue. Because *Hlady* emphasized Hlady's concession of the issue, we have noted in the accompanying text that Travis did not concede the issue of paternity. We do not wish to be understood as saying that a person may relitigate an issue that he had an opportunity to contest on the basis that he did not concede the issue.

Travis may seek reconsideration and a change of the determinations in the decree of divorce because of the change in law and the operative effect of the decree of divorce affects payments that would otherwise become due after the change in law, not because he did not concede the issue.

adopted the following text and explanation from the Restatement of Judgments:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> * * *
>
> (b) The issue is one of law and . . . (ii) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws . . . .[7]
>
> A rule of law declared in an action between two parties should not be binding on them for all time, especially as to claims arising after the first proceeding has been concluded, when other litigants are free to urge that the rule should be rejected. Such preclusion might unduly delay needed changes in the law and might deprive a litigant of a right that the court was prepared to recognize for other litigants in the same position.[8]

The Court referred to its decision in *Young v Detroit City Clerk,* 389 Mich 333, 338; 207 NW2d 126 (1973), where the Court had similarly relied on this language in the Restatement in holding that Coleman A. Young was not precluded from running for the office of Mayor of the City of Detroit in 1973 by an earlier decision of this Court that had prevented him from running for mayor in 1969.

The general rule of issue preclusion does not apply, without regard to whether the issue is one

---

[7] *Socialist Workers Party* quoted from Restatement Judgments, 2d (Tentative Draft No 1, 1973), § 68.1, pp 170-171, which became Restatement Judgments, 2d, § 28, pp 273-274.

[8] Restatement Judgments, 2d, § 28, comment b, pp 275-276.

of law or fact, where, as set forth in the Restatement of Judgments, the party sought to be precluded, as a result of "special circumstances, did not have an adequate opportunity" "to obtain a full and fair adjudication in the instant action":

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> * * *
>
> (5) There is a clear and convincing need for a new determination of the issue . . . (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.[9]

Illustration 11 to the Restatement states that in a case where the law is changed to reduce the burden of persuasion on the issue of fraud from "clear and convincing" to a "preponderance of the" evidence, an adverse determination on the factual defense of fraud in an action on a "series of notes" governed by the higher standard, would not preclude relitigation of the fraud issue, after the change in the burden of persuasion, in an action "on another note in the series":

> A brings an action against B to recover on a promissory note. B defends on the ground that he was induced by A's fraud to give this and other notes in the series, but fails to establish fraud by clear and convincing evidence as required by law. After judgment for A, the law is changed to provide that in such cases fraud need be proved only

---

9 Restatement Judgments, 2d, § 28, pp 273-274.

by a preponderance of the evidence. In an action by A on another note in the series, B is not precluded from asserting the defense of fraud. [Restatement Judgments, 2d, § 28, p 282.][10]

What emerges is that where there has been a change of law ("an intervening change in the applicable legal context"), and the party sought to be precluded was deprived by the former rule of "an adequate opportunity" "to obtain a full and fair adjudication in the initial action," he is not precluded, in a later action respecting a subsequent time period, by the former adjudication.

III

A child support order operates prospectively. It is subject to modification because of changes in circumstances. In the instant case, Lynel sought an increase in child support, and a change has been ordered by the circuit court increasing the amount of child support. As stated in *Socialist Workers Party* and *Young,* a change in law as well as a change in fact may justify reconsideration of a prior adjudication claimed to have continuing operative effect and to govern rights in respect to periods of time commencing after the adjudication.[11]

The predicate of both the provision for child

[10] Although not stated, "another note in the series" presumably would be a note that became due after the action on the notes where the defense failed.

[11] The commentary to the Restatement Judgments, 2d, § 28, p 278, explains this exception to the general rule of issue preclusion with the following illustrations:

3. A, a state agency, brings an action against B to revoke B's wholesale liquor license on the ground that B has violated the law governing the license by selling only to himself as a retailer. The court grants B's motion to dismiss for failure to state a claim, holding that the conduct charged does not violate the law. In a subsequent action by A against C, a higher court

support in the decree of divorce and of the October, 1984, order of the circuit court modifying and increasing the amount of child support is that Travis is the father of Antoine. Travis was, before entry of the decree of divorce, prevented by Lord Mansfield's Rule from offering either his or Lynel's testimony that he was not Antoine's father. Subsequently Lord Mansfield's Rule was abrogated in *Serafin.*

On the same principle that the Socialist Workers Party and Coleman A. Young were not precluded by a prior adverse adjudication from relitigating in respect to another election the question whether they were entitled to a place on the ballot, Travis is not precluded by a prior adverse adjudication that had barred him from offering testimony of nonaccess and requiring him to pay child support from relitigating his obligation to pay child support for time periods subsequent to the filing of the petition to determine whether he was Antoine's father.

holds that identical conduct by C is ground for the revocation of C's wholesale liquor license. In a second action against B for revocation of B's license, A is not precluded from asserting that since the first dismissal, B has continued, as before, to sell only to himself as a retailer.

4. A, a non-profit organization, brings an action against B, the tax commissioner, for a refund of property taxes on the ground that it is exempt as a charity. The court gives judgment for B, adopting a narrow definition of the charitable exemption. Shortly after, a higher court of the same jurisdiction grants a property tax refund to C, an organization quite similar to A, and in doing so formulates a much broader definition of the exemption. In a subsequent action by A against B for a refund of property taxes paid for the following year, A is not precluded from asserting that it is entitled to the charitable exemption. It does not matter that the nature of A's activities has not changed since the first action.

The foregoing illustrations indicate that the exception to the general rule of preclusion applies although the change of law concerns a factual question, the actor's conduct (Illustration 3), or his status (Illustration 4).

IV

In the instant case, the circuit court increased the child support allowance for Antoine, presumably because of a change in circumstances. To hold that the increased needs of Antoine or increased means of Travis constitute a change in circumstances that may justify a change in the prior determination or judgment but that a change in the rule of law known as Lord Mansfield's Rule does not constitute a change in circumstances that may justify a change in the prior determination or judgment would be to announce an empty distinction. Where a court's order operates prospectively, revision of the order may, in light of a change in law as well as a change in fact, be justified.

The Supreme Court of North Carolina ruled that where the law had been changed to allow the use of blood grouping tests to prove paternity as well as to disprove it and to allow both plaintiff's mother and presumed father to testify as to paternity, a prior determination adverse to the child did not preclude relitigation of the question in a different action in behalf of the child. *Settle v Beasley,* 309 NC 616; 308 SE2d 288 (1983). The Supreme Court of Pennsylvania ruled, forty-five years after it was decided that an adopted child was not a child or issue, that the question could be relitigated, after the death of the life tenant, where there had been a change in law regarding the status of adopted persons as children or issue, *Estate of DeRoy,* 481 Pa 403; 392 A2d 1355 (1978). See also *In re Biddle Estate,* 487 Pa 616; 410 A2d 782 (1980).

Travis is not seeking another opportunity to relitigate before another factfinder a question that he had an adequate opportunity to litigate; because of Lord Mansfield's Rule, Travis had no

opportunity on the initial determination to put in evidence his own or Lynel's testimony concerning access, and as a result there was no assessment by the judge or other factfinder of the merits. Nor is Travis seeking to recover amounts paid pursuant to the former adjudication, or to obtain cancellation of amounts that were required to be paid before he filed, after *Serafin* was decided, a petition for determination whether he was the father. He seeks as to future time periods only, revision in light of a change in circumstances, the "intervening change in the applicable legal context." Thus he seeks what was granted Lynel and Antoine when the child support allowance was revised as to future time periods in light of a change in circumstances.

Finality in litigation is a virtue, but there is no finality when a court order operates prospectively and is, by its implied in law terms, subject to change.

Income maintenance awards, whether for child support or pursuant to a social welfare program, are necessarily subject to change in light of a change in law or fact.[12]

The continued enforcement of an income maintenance award after the factual or legal justification therefor has plainly vanished cannot be justified on the basis of "financial"[13] or psychic[14] needs

---

[12] Cf. *Franks v White Pine Copper Div,* 422 Mich 636, 654, 683; 375 NW2d 715 (1985).

An employer or its insurance carrier should not be required to continue to pay benefits after an intervening decision establishes that an erroneous rule of law was applied in making an award. Like a change in physical condition or status, such a decision should relieve the employer of the further obligation to pay benefits. [*Gose v Monroe Auto Equipment Co,* 409 Mich 147, 208; 294 NW2d 165 (1980) (LEVIN, J.).]

[13] *Ante,* p 598, and n 11.
[14] *Id.*

of the claimant (or even preservation of her mother's "resources"[15]) or the avoidance of "unfairness"[16] or "chaos and humiliation."[17]

In sum, the general principle of issue preclusion does not preclude reconsideration of a former determination or judgment that operates prospectively where there has been a change in circumstances (law or fact) justifying reconsideration of the future operative effect of the former determination or judgment.

V

We have considered the claim that Antoine would be adversely affected because permitting the question to be reopened might result in a determination that Antoine was not a legitimate child of the marriage. Travis, however, has steadfastly maintained he is not the father, and has refused to exercise his right of visitation with Antoine although he has regularly exercised that right with respect to the older child. Antoine, now fourteen years old, thus knows as well as Lynel that Travis is not her father. The blood tests are known, and it appears that the true father may have maintained some continuing relationship with Lynel and her children. It is questionable whether requiring Travis to continue to pay child support would do more than preserve a facade of legitimacy.

I am not aware that "paternity determinations" are a more "highly emotion-charged area"[18] than countless other litigation battlegrounds. What is at stake here is money, not Antoine's paternity.

15 *Id.*

16 *Ante,* p 590.

17 *Ante,* p 599.

18 *Ante,* p 589.

A recently enacted law permits paternity proceedings to be instituted at any time before a child reaches eighteen years of age.[19]

The "best interests of [the] child,"[20] "potential for embarrassment and humiliation that a determination of paternity may have on the delicate psyche of a child"[21] and preservation of "the legitimacy of children"[22] arguments are reminiscent of the defense of Lord Mansfield's Rule, which I had thought this Court rejected in *Serafin.*

## VI

We would hold that the doctrine of res judicata does not bar a husband from seeking the elimination of child support payments that otherwise would become due under a decree of divorce for time periods subsequent to filing a petition seeking modification on the basis that he was not the father, where as here he maintained before entry of the decree of divorce that he was not the father and was prevented by reason of Lord Mansfield's Rule from offering testimony of nonaccess.

We would reverse and remand to the circuit court for further proceedings consistent with this opinion.

WILLIAMS, C.J., and ARCHER, J., concurred with LEVIN, J.

---

[19] (2) Proceedings in pursuance of this act may be instituted during the pregnancy of the mother or at any time before the child reaches 18 years of age. This subsection shall apply regardless of whether the cause of action accrued before June 1, 1986 and regardless of whether the cause of action was barred under this subsection before June 1, 1986. [1986 PA 107, MCL 722.714; MSA 25.494.]

[20] *Ante,* p 597.

[21] *Ante,* p 598.

[22] *Ante,* p 599.