# Bonnie L. Lyon v. Dawson J. Lyon

[466 A.2d 1186]

No. 82-425

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed September 28, 1983

*William M. McCarty*, Brattleboro, for Plaintiff-Appellee.

*Fitts, Olson, Carnahan, Anderson & Bump*, Brattleboro, for Defendant-Appellant.

**Underwood, J.** Defendant appeals from a portion of an order of the Windham Superior Court which assessed a money judgment against him for arrearages owed for child support payments under a divorce order dated August 31, 1971. We affirm.

On October 5, 1970, plaintiff filed her petition for divorce. In response to her prayer for temporary relief, defendant joined with her in executing a stipulation wherein, among other things, he agreed to pay her the sum of $40 per week for the support of their infant child. Defendant accepted service of the temporary order dated November 25, 1970, which was based on the stipulation and which contained the same proviso that he would pay $40 per week child support "until further Order of this Court."

On January 25, 1971, and June 12, 1971, plaintiff filed petitions for contempt against the defendant alleging he was in arrears in temporary child support. On May 23, 1971, a mittimus issued but defendant purged himself by paying the then arrears. The contempt petition of June 12th was heard at the same time as the hearing on the merits of the divorce case on July 12, 1971. The court found defendant to be in arrears under the temporary child support order in the sum of $1,040 and ordered him to pay that sum to the Department of Social Welfare. He was further ordered to pay $40 per week child

support to the Department for the period July 23, 1971, to September 3, 1971.

Although defendant did not appear personally in the courtroom at the time of the hearing on the merits of the divorce and the petition for contempt, he was represented by counsel, and in his own words was "out in the hallway by the doors."

On July 30, 1971, the entry in the case was made and on August 31, 1971, the finding and decree were filed. In each instance copies were mailed to counsel for the parties. The final decree ordered him inter alia to pay plaintiff $20 per week child support "until the child becomes of age and self-supporting."

Defendant was never personally served with a copy of the final decree until February 17, 1982, in conjunction with plaintiff's petition for contempt and for modification.

Although the trial court found that it "appears he knew that the separation was granted . . . ," that there was "no evidence that he knew of a duty to support . . . ," and that "[i]t therefore appears that defendant was unaware of the terms of the 1971 decree until service was made on February 17, 1982," our review of the record indicates he knew, at the time of the divorce hearing, that he was in arrears in his child support payments under the temporary order, which provided that they were to continue weekly "until further Order of this Court."

In 1973, defendant telephoned the plaintiff and asked if he could see the child. At that time plaintiff indicated that he could if he would assume his financial responsibility to support the child. Defendant retaliated with an obscene remark and hung up. She never heard from him again.

In 1978 defendant remarried. Before he could obtain his marriage license he had to have proof that he was divorced. His fiancee obtained a copy of the divorce decree. When asked if he saw the decree then his answer was, "I might have and I might not have. I don't remember."

Defendant admitted that he made no child support payments during this ten year interval but never claimed an inability to pay child support. He did maintain, however, that he did not know where the plaintiff was living. Yet they were both living and working in Vermont and each knew where the parents of the other lived. He also stated he never once saw his child during this ten year period.

Plaintiff's petition for contempt and modification dated February 22, 1982, prayed for some ten years of back support payments, arrearages in medical and dental expenses, and other relief. After a hearing on the merits on July 22, 1982, the court: (1) dismissed the petition for contempt, ruling that service of the order is a procedural prerequisite to the institution of such a petition; (2) entered judgment for plaintiff in the sum of $11,080, the amount of arrearages it found owed by defendant to the plaintiff for child support; and (3) modified the support order to provide $48 per week.

Defendant appeals from the money judgment of $11,080. He argues that (1) he cannot be held responsible for arrearages on a support order which was never served and about which he had no knowledge, and (2) recovery of arrearage is barred by laches and/or the doctrine of equitable estoppel. We disagree with both of defendant's contentions.

In support of his first argument, defendant submits that the court properly ruled that without service there could be no contempt. He then argues that the same rule should extend to the enforcement of judgments. Defendant is correct in stating that a party who has not been served with an order may not be punished for contempt. *Socony Mobil Oil Co.* v. *Northern Oil Co.*, 126 Vt. 160, 163, 225 A.2d 60, 63 (1966). However, he offers no legal support for his position that enforcement of support orders is predicated on the fact of service of the order. Moreover, defendant ignores the rule that a judgment order or final decree in a divorce case becomes effective, not upon the date it is served upon the losing party, but rather upon the date that it is issued by the court. V.R.C.P. 54(a) and 58.

Contrary to defendant's assertions, the requisites for a finding of contempt are not the same as those for a finding that a party is in arrears under a child support order. The statute which provides for the action to recover child support from the person liable for it, 15 V.S.A. § 606, does not require service of the original order. Rather, a judgment may be "obtained on judgments, decrees, and orders previously rendered and still in force." *Id.* Nonservice does not excuse a person from liability for the payment of arrears under a child support order.

■ Defendant next argues that plaintiff is barred from recovering arrearages by her laches and/or the doctrine of equitable estoppel. However, we hold that these affirmative defenses are not available in an action brought to secure enforcement of a child support order. In so doing, we follow those jurisdictions which hold that child support arrearages may not be defeated by such means. *Armour* v. *Allen*, 377 So. 2d 798 (Fla. Dist. Ct. App. 1979) ; *Paterson* v. *Paterson*, 73 Wis. 2d 150, 242 N.W.2d 907 (1976) ; *Holmes* v. *Burke*, 462 S.W.2d 915 (Ky. 1971) ; *Peters* v. *Weber*, 175 Kan. 838, 267 P.2d 481 (1954).

An order for child support does not involve only the parent required to make such payments and the custodial parent entitled to receive them. Under 15 V.S.A. § 651 such payments are made for the support, maintenance and education of the minor children of the parties. The rights of such children are to be served and protected. Their welfare is paramount. *White* v. *White*, 141 Vt. 499, 503, 450 A.2d 1108, 1110 (1982). As such, plaintiff may not be found to have waived her child's right to receive support from defendant by her failure to enforce the child support order or to reduce the arrearages to a judgment in a more timely fashion.

■ The child was not guilty of laches or acquiescence, and we will not attribute any such guilt on the part of the plaintiff to the child for whose benefit the original support award was made. Thus, we affirm the trial court's money judgment for the amount of arrearages owed by defendant for child support.

Finally, we must address plaintiff's cross-appeal. She argues first that the court's order neglected to incorporate certain findings made by the court with respect to the defendant's obligation to obtain medical insurance for the benefit of the minor child, to pay one-half of all future medical expenses not covered by said insurance, and to pay one-half of all medical expenses previously incurred by the plaintiff for the benefit of the minor child.

■ Defendant's counsel conceded in oral argument that defendant had no objection if this Court corrected the trial court's error by amending the order so that he became obligated to pay one-half of all future medical expenses for the

minor child not covered by insurance. He did not concede, however, that the trial court's findings would permit any further amendment of its order. For this reason, we must remand the case for further findings on the issue of medical expenses of the child, past, present and future.

The plaintiff's second argument is that the court erred in awarding her only $48 per week in child support in connection with her petition for modification. We have thoroughly reviewed the record and find that the order of $48 per week is supported by the evidence and that the plaintiff has failed to demonstrate that the trial court abused its discretion by issuing such an order.

The judgment order of $11,080 and the order modifying the child support payments to $48 weekly is affirmed. The cause is reversed and remanded to correct the omission in the trial court's order with respect to medical, hospital and dental benefits, past, present and future, for the minor child, and for such further findings on those issues as may be necessary.

*Affirmed in part, reversed and remanded in part; each party to bear his or her own costs.*

**Peck, J.,** dissenting. In my judgment the majority decision results in an injustice against the defendant. Needless to say I will not lend my concurrence to this decision, and accordingly dissent.

The fact that judgments speak as of the date they are issued does not address the peculiar facts of this case. The majority complain that defendant "offers no legal support for his position that enforcement of support orders are predicated on the fact of service of the order." I find this difficult to understand when the majority opinion contains the identical fault on the reverse side of the coin. Indeed my underlying objection to the opinion in its entirety is its complete failure to cite any authority whatever which is truly in point or to address the peculiar key fact of this case: defendant's lack of knowledge of his support obligation. In its decision and order the trial court found *expressly:*

> [I]t appears [defendant] knew that the separation was granted, but there is no evidence that he knew of a duty to

support. No demand for arrearages was ever made such that defendant became aware of the duty. It therefore appears that defendant was unaware of the terms of the 1971 decree until service was made on February 17, 1982.

None of the authorities relied on by the majority are in point at all, in my view, for the obvious reason that they are not based on the essential and distinguishing fact presented here.

The date on which an order becomes effective has no *necessary* significance if the party against whom it operates has not been served with a copy, and, even more significantly here, has literally no knowledge that a particular obligation exists under the order. I find no authority which addresses the virtually unheard-of factual situation presented by the instant case. Certainly the majority does not favor us with any. For this reason I believe the analysis contained in the opinion lacks validity because of its failure to include the unusual but key fact which distinguishes this case from those which may otherwise resemble it. I feel we should have addressed the question squarely even though it involved an unprecedented factual pattern and required us to make new law to clarify the issue.

In the light of the facts of this case as found by the trial court, I believe any concept of fairness—and, accordingly, justice—demands that defendant's obligation to make support payments should not be imposed retroactively. I would so hold.

I disagree as well with the reliance placed by the majority on those cases which hold that child support arrearages may not be defeated by laches. Once again, I believe the majority overlooks the peculiar facts of the instant case. Again, none of the cases cited present a comparable factual situation; they do not support the majority.

Contrary to the majority opinion's suggestion, the question is not a waiver by plaintiff of her child's right to support, or of laches on the part of the child. The "support" involved in the arrearages reaches back into the past. It is impossible for the child *now* to be supported by defendant for the 1971–1982 years. It is present and future support which is involved, the past support responsibility was assumed voluntarily by the plaintiff, who now seeks a windfall at defendant's expense which she may or may not use for child support or personal purposes as she sees fit, based on her needs and inclinations

today and hereafter. The argument contained in the opinion relates to legal principles which are not even presented by this case; it is, in my dissenting view, a tangential misdirection and obfuscates the legitimate issues properly raised by the facts.

The wrong here is compounded by the undisputed facts that not only did the defendant have no knowledge of his obligation to make support payments, but the plaintiff *did* know of the order, and did absolutely nothing to enforce it for over ten years. I would condemn this conduct rather than reward it, and I cannot help but wonder how long this neglect would have been condoned, had it extended beyond ten years. Would another five years have made any difference? Could plaintiff have waited until the minor became of age and then collect the arrearage? If ever a situation cried aloud for application of the doctrine of laches this is such a case.

The majority seeks to justify its rejection of laches on the ground that the welfare of the child is paramount. In my view this does not justify the plaintiff's conduct; it is simply not applicable. There is nothing in the record to show that the welfare of the minor has been adversely affected. The true situation is that the welfare of the child *is* protected by the payments required to be made hereafter. The arrearage is not now needed, obviously, because, as far as the record shows, the child was properly cared for during that period; that was the purpose of the order in the first instance. Granting the support payments were called for by the original order, if they were truly needed during the period of plaintiff's culpable silence, it is inconceivable that she would not have acted long before this action was commenced. Instead she let an enormous debt from her former husband accumulate until its payment has become a real hardship. It was a debt he had no knowledge even existed. The child welfare argument provides no fair support for the injustice wrought in its name. Moreover, the record does not show any adverse effect on the child's welfare in the past, or that it will be jeopardized hereafter by reason of the failure of periodic support payments. "Welfare of the child" is simply inapplicable as far as this case and its record are concerned.

Finally, it might be argued that payment of the arrearage can be justified as reimbursement for money expended by

plaintiff for the support and welfare of the child, which, had defendant known of the order, should have been paid by him. This has little merit. As far as the child was concerned, there is nothing to show that the child's interests have been adversely affected. On the other hand, if plaintiff did expend her own funds, it was by her own choice. She could have instituted an action to enforce the order at any time during the ten year period in which she slept on her rights to the serious detriment of defendant. The majority has sanctioned an outright windfall in her favor as a reward for her culpable laches.

I think I should make it clear that my views revolve entirely around the unusual key fact presented here: defendant's lack of knowledge. I will not speculate on the conclusion I might reach in a case involving a different fact pattern. Nevertheless, stare decisis should not be an obstacle to a case-by-case review based on the facts of each case, particularly where, as here, none of the precedents relied on by the majority are squarely in point on the facts presented by this unusual case. In short and in fact, stare decisis provides no legitimate precedent for the majority view.

I am not sure I understand the point attempted by the opinion in its recitation of certain evidence concerning the defendant. The opinion contends, for example, that he knew he was in arrears under the temporary order, which was to continue until further order of the court. However, no claim was made by plaintiff that defendant's obligations after the final decree were based in any way on the temporary order; it is not in the case. It is most inconsistent to argue, as the opinion seems to do, that the *final* support order became effective and binding on the defendant when it was issued whether he knew about it or not, and then go on to say that his obligation *continued* under the temporary order. If the final order became effective and binding upon issue, then the temporary order became void on the same date, also whether defendant knew it or not.

Further, some of the language employed by the majority is in direct conflict with the findings of the trial court. Thus, the majority recites, "When asked if he [defendant] saw the decree then his answer was, 'I might have and I might not have. I don't remember.'" I cannot imagine any purpose for this except as a sub rosa finding that, contrary to the express finding

of the trier of facts, the defendant knew very well, almost from the outset, what his obligations were.

As I read the opinion, I believe the majority is using non-relevant material as additional support for the end result. Not once does the majority comment on the negligent and culpable conduct of the plaintiff, which is highly relevant to the legal issue of laches, regardless of how we resolve it. On the other hand it attacks the defendant with a seeming implication that he was not telling the truth. That is a concern of the trial court alone. Whatever beliefs we may form in reading between the lines of a record of proceedings below, in my judgment they have no place in an appellate opinion when, as here, they do not relate to the legal issues to be determined, and particularly so when they tend to question the trial court's findings. Findings of fact are for the trial court alone and must stand if there is credible evidence to support them, *Victor* v. *Victor,* 142 Vt. 126, 130, 453 A.2d 1115, 1117 (1982), even though there may be inconsistencies or substantial evidence to the contrary. *Griffith* v. *Nielsen,* 141 Vt. 423, 429, 449 A.2d 965, 968 (1982). If we have some basis for overturning findings we should do so, per se. Accordingly, I object to the inclusion in the opinion of those paragraphs which tend to cast aspersions on the defendant's character when they do not involve the legal issues before us. In my judgment, these comments constitute no more than an attempt to bolster a result which I believe strongly is unjust by reliance on matters wholly outside the scope of proper appellate review in the instant case.

I have no objection to the majority affirmance of the amount of child support ordered in connection with plaintiff's petition for modification. Nor do I challenge the validity of the remand for correction of an error in the order as recited by the majority opinion. Beyond this limited concurrence, however, I reiterate my opening comment that the majority opinion has worked an injustice in affirming the order relating to the arrearage. I cannot lend my name to such a result. To the extent a toothless dissent has any significance, I would reverse on the arrearage issue.