## Barbara A. Callaert v. Roy Callaert

[591 A.2d 99]

No. 86-238

Present: Allen, C.J., Peck and Dooley, JJ., and Costello, D.J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed April 5, 1991

*Barbara A. Callaert*, pro se, Bennington, Plaintiff-Appellant.

*K. James Malady*, Bennington, and *Dailey and Dailey*, Manchester (On the Brief), for Defendant-Appellee.

**Peck, J.** Plaintiff wife appeals pro se from the trial court's denial of her prayer for support arrearages. We reverse and remand.

The parties were divorced in 1979, and by stipulation they agreed to joint custody of the couple's two children, Tonia and Kristopher, with physical custody in plaintiff. Defendant was ordered to pay $50 per week for child support and to deposit $15 per week into a savings account for the children. By agreement in July, 1981, the final order was modified to allow their son Kristopher to reside with defendant. Nevertheless, the $50-per-week payment for child support was to continue under the agreement, as was the $15-per-week savings deposit.

The trial court found that following modification of the final order, defendant:

> began to neglect his financial responsibility as defined in the Orders of this Court. He didn't pay the support that he had agreed to pay for Tonia. He didn't make the deposits that he had agreed to make on behalf of his children and without expressly consenting to that unilateral decision on the part of Roy by taking no action at all, Barbara let it happen. She chose not to go through the hassle and expense and the misery of an enforcement proceeding.
>
> And that is a choice that, especially in those years—the '80's was frequently made and it was an understanding— it's a choice that the Court can now understand her having made especially under all of the facts. It was partially motivated by the fact that Roy had run into some financial difficulties with his business in the early '80's—in 1981 and 1982, but I emphasize partially because that wasn't the only reason that she let it go.

The court concluded that plaintiff had waived rights to the arrearages "by nonenforcement and by mutual agreement between the parties during the period that they were accumulating [sic]." As a second ground for its decision, the court stated that payment of the arrearages would impair defendant's ability to meet his obligations arising from his second marriage, including support for the three children of his second wife from her previous marriage. This appeal followed.

■■ Plaintiff argues first that she never waived her right to seek arrearages. Although findings of the trial court will not

be set aside unless they are clearly erroneous, *Belanger v. Belanger*, 148 Vt. 202, 204, 531 A.2d 912, 914 (1987), we made clear in a previous opinion that, because child support payments "are made for the support, maintenance and education of the minor children of the parties . . . [whose] welfare is paramount," a parent may not be found to have waived his/her children's right to receive support. *Lyon v. Lyon*, 143 Vt. 458, 462, 466 A.2d 1186, 1189 (1983). *Lyon* controls here; plaintiff may not be found to have waived her child's right to receive support.

■■ Nor is the trial court's order relieving defendant of the duty of paying the accumulated support arrearages authorized as an exercise of judicial discretion given defendant's financial situation. While under Vermont statutory law in effect prior to 1982 (15 V.S.A. § 760), the trial court had discretion over the repayment of arrearages, that discretion disappeared with the adoption of 15 V.S.A. § 606, which "mandates that a superior court, in an action to recover child support, 'shall render judgment for the amount due' under the original judgment or decree." *Forte v. Forte*, 143 Vt. 518, 520, 468 A.2d 561, 562 (1983) (quoting 15 V.S.A. § 606).\*

*The judgment below is reversed, and the case remanded to the superior court for further proceedings consistent with this opinion.*

---

\* Even under the prior law, there would have been no evidence in the present case to support the court's conclusion that defendant was not financially able to pay the arrearages. He testified that he went through personal bankruptcy, and was discharged in April, 1981, a few months before he began slackening off in his support obligations. But he did not introduce any evidence tending to show that payment of the arrearages at the time of the trial court's decision would have imperiled his overall financial condition or would have jeopardized the well-being of his new family.