## Michael St. Hilaire v. Lisa St. Hilaire DeBlois

[721 A.2d 133]

No. 97-227

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed October 30, 1998

*Colin R. Benjamin* of *Benjamin & Kazmarski, P.C.*, Derby, for Plaintiff-Appellee.

*Jim Torrisi*, Derby Line, for Defendant-Appellant.

**Johnson, J.** Defendant Lisa St. Hilaire DeBlois appeals from a superior court judgment in favor of her former spouse, plaintiff Michael St. Hilaire. The superior court ruled that DeBlois had fraudulently misrepresented the fact that St. Hilaire was the biological father of the minor children born during the marriage, and awarded damages of $15,500 representing the amount of child support that St. Hilaire had previously paid under a support order in the divorce decree. DeBlois contends, and we agree, that the civil fraud action was barred as an impermissible collateral attack on the parties' divorce judgment. Accordingly, we reverse.

The parties were married in 1983. DeBlois gave birth to a daughter in 1986, and a second daughter in 1990. The parties separated in 1992, and a final order and decree of divorce was entered in March 1993. The divorce judgment awarded sole physical rights and responsibilities for the children to DeBlois, and awarded shared legal rights and responsibilities to DeBlois and St. Hilaire. St. Hilaire voluntarily paid child support of $50 per week from April to July 1992, and thereafter, by court order, paid child support of approximately $97 per week until June of 1995. In that month, he filed a motion for genetic testing with the Orleans Family Court, alleging by affidavit that he had known or suspected "for some time" prior to the divorce that he was not the children's biological father. DeBlois filed a responsive affidavit acknowledging that St. Hilaire was not the children's biological father. In July, based on the parties' stipulation, the family court dismissed the motion for genetic testing and vacated all previous child support orders.

The following month, St. Hilaire filed this separate fraud action in the Orleans Superior Court. Following a bench trial, the court found that DeBlois had knowingly and intentionally misrepresented that St. Hilaire was the children's biological father, that St. Hilaire did not have the correct information until DeBlois acknowledged his nonpaternity in June of 1995, and that St. Hilaire had relied on the misrepresentations to his detriment. Accordingly, the court ruled that St. Hilaire was entitled to recover the previously paid $15,500 in child support. This appeal followed.

■ ■ ■ As we observed in *Tudhope v. Riehle*, 167 Vt. 174, 177, 704 A.2d 765, 767 (1997), the legislation that created the family court simultaneously denied the superior court jurisdiction over actions cognizable in the family court. See 4 V.S.A. § 113 (superior court has original and exclusive jurisdiction over all original and civil actions "except those . . . made cognizable by . . . the family court"). The family court has exclusive jurisdiction over divorce proceedings, which includes the award, modification, and enforcement of child support. See 4 V.S.A. § 454(4); 15 V.S.A. §§ 606, 650, 660; 33 V.S.A. § 3901(5). The family court may, on motion and a proper showing, "annul, vary or modify a child support order, whether or not the order is based upon a stipulation or agreement." 15 V.S.A. § 660(a). The court's authority to modify or annul child support, however, extends only to *future* support installments and installments which accrued subsequent to the notice of the motion. See *id.* § 660(e). Thus, we have held that the family court has no discretion to modify or annul previously paid child support installments. See *Isham v. Isham*, 152 Vt. 637, 639, 568 A.2d 421, 423 (1989). Furthermore, the court must award *in full* any arrearages that have accrued prior to a modification motion or petition to enforce. See 15 V.S.A. § 606(a) ("the family court shall render judgment for the amount due under the judgment or order"). Accordingly, the family court has no authority to relieve the obligor spouse of the duty to pay any accumulated child support arrearages. See *Callaert v. Callaert*, 156 Vt. 265, 267, 591 A.2d 99, 100 (1991).

■ In light of the foregoing, it is readily apparent that St. Hilaire's fraud action in the superior court amounted to nothing more than a collateral attack on the validity of the child support order in the divorce judgment, a subject committed to the exclusive jurisdiction of the family court. See *Tudhope*, 167 Vt. at 177-78, 704 A.2d at 767-68 (holding that wife's complaint that husband had fraudulently induced her to accept separation agreement was impermissible collateral attack on divorce judgment that should have been directed to family court). Indeed, prior to filing his fraud action, St. Hilaire had readily availed himself of the family court's jurisdiction, as evidenced by his successful motion to vacate the previously existing support order and thereby relieve himself of future support obligations. The fact that the family court lacked the authority to annul the child support obligation *retroactively* did not divest that court of jurisdiction over the subject matter, or somehow vest jurisdiction in the superior court. On the contrary, the statute expressly denying the family court such

authority underscores the legislative policy that previously paid or accrued child support obligations may not be retroactively annulled or modified. See *Isham*, 152 Vt. at 639, 568 A.2d at 423; 15 V.S.A. § 660(e). Accordingly, the superior court was without jurisdiction in this matter to modify or annul the previously paid child support installments.

Nevertheless, St. Hilaire argues that it is unfair to deny him retroactive relief because DeBlois's fraudulent mispresentations prevented him from contesting paternity and child support in the divorce proceeding. Many courts, including our own, have concluded for reasons of public policy that a father who had the opportunity to litigate paternity in a final divorce action may not relitigate the issue in a later proceeding. See *Lerman v. Lerman*, 148 Vt. 629, 629, 528 A.2d 1121, 1122 (1987) (mem.). Other courts have held to the contrary. See, e.g., *Masters v. Worsley*, 777 P.2d 499, 503 (Utah Ct. App. 1989).

That issue is not before us in this case. Here, DeBlois acknowledged St. Hilaire's nonpaternity and agreed to relieve him of future child support obligations. She did not, however, consent to annul St. Hilaire's previously paid child support installments, nor could she have validly done so. As noted, a family court does not have the authority to annul or modify child support payments retroactively, and a parent may not waive such payments on behalf of the dependent children. As we have explained, "such payments are made for the support, maintenance and education of the minor children," and "[a]s such, [a parent] may not be found to have waived her child's right to receive support." *Lyon v. Lyon*, 143 Vt. 458, 462, 466 A.2d 1186, 1189 (1983).

Indeed, the underlying policy that courts often invoke to bar relitigation of paternity applies with even greater force to preclude later actions to modify or annul child support obligations retroactively. As one court has observed, "[t]here is no area of law requiring more finality and stability than family law . . . ." *Hackley v. Hackley*, 395 N.W.2d 906, 914 (Mich. 1986). To permit former spouses to recoup previously paid or accrued child support installments would visit considerable financial instability and hardship upon the custodial parent and the dependent children for whose benefit such monies have already been expended. Public policy plainly requires that the children of divorce be sheltered from the unsettling effects of relitigation over child support payments previously paid or accrued.

In sum, the relief sought by St. Hilaire in this fraud action represented a collateral attack on the underlying validity of the child

support order that should have been brought in the family court in the first instance, and, in any case, was barred as a matter of law and public policy.

*Reversed.*