# Julie Jones v. Richard J. Murphy

[772 A.2d 502]

No. 00-067

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed March 2, 2001

*Karen Miller* of *Miller & Tonelli*, Randolph, for Plaintiff-Appellee.

*Peter M. Nowlan* of *Nowlan & Meyer*, Randolph, for Defendant-Appellant.

**Amestoy, C.J.** Defendant Richard Murphy appeals a parentage order finding him to be the biological father of Eric Jones, the youngest son of plaintiff Julie Jones. Defendant asserts that the Orange Family Court was without jurisdiction to consider plaintiff's parentage complaint against him because: (1) a final divorce judgment between plaintiff and her ex-husband Jeffrey Jones had determined that Mr. Jones had parental rights and responsibilities for Eric; (2) a subsequent "amended" divorce order, in which plaintiff and Mr. Jones ac-

knowledged that he was not Eric's biological father, was without effect because it was issued after the expiration of the nisi period, and was neither an amendment to the original judgment pursuant to V.R.C.P. 59(e), nor relief from the judgment pursuant to V.R.C.P. 60(b); and (3) the compelling public interest in the finality of paternity determinations requires us to apply the doctrine of res judicata to the facts of this case.

We reject defendant's assertion that res judicata applies to this case, but nonetheless reverse the trial court's order of parentage, finding defendant to be the biological father of Eric Jones, because it conflicts with an existing judgment of the Orange Family Court which found Mr. Jones responsible for Eric's support.

## I. Background

Eric Jones was born on May 16, 1997. At the time of his conception and birth, Eric's mother, plaintiff Julie Jones, was married to Jeffrey Jones. Mr. Jones was designated the father on Eric's certificate of birth. In August 1998, the Joneses obtained a final divorce order which granted the parties "shared legal rights and responsibilities for their minor children," including Eric.

In September 1998, plaintiff, defendant and Mr. Jones underwent genetic testing which determined the possibility of defendant's paternity to be 99.998%. Mr. Jones's probability of paternity was 0%. On September 29, 1998, Julie and Jeffrey Jones entered into an "amended final stipulation," in which they acknowledged the fact that Mr. Jones is not Eric's biological father. One day later, plaintiff filed a complaint for parentage against defendant.

Neither plaintiff nor Mr. Jones moved to amend the original August 21, 1998 divorce order within the ninety day nisi period, which expired in November 1998. Instead, in December 1998, the Jones's final divorce order was amended pursuant to the September 29, 1998 stipulation of the parties to reflect the fact that "recent testing" had established that Mr. Jones is not the biological father of Eric, and he is therefore "granted no parental rights and responsibilities with respect to Eric." The Jones's final divorce order was amended by the same assistant judge who issued the original August 1998 divorce order pursuant to the parties' first stipulation.

In response to the complaint of parentage made against him, defendant moved for summary judgment, contending that the Orange Family Court was without jurisdiction to consider plaintiff's parentage complaint because plaintiff and Mr. Jones were bound by the August

1998 divorce decree in which they had agreed to shared legal rights and responsibilities for their minor children, including Eric. The court denied defendant's motion. Defendant then stipulated to a final order of parentage finding him to be the father of Eric, while preserving his argument that the court was without jurisdiction to enter the judgment of parentage.

Defendant contends on appeal that: (1) the Orange Family Court was without jurisdiction to consider plaintiff's parentage complaint against defendant because no relief from the original divorce decree in the matter of *Jones v. Jones* had been obtained; and (2) res judicata bars plaintiff from filing a complaint of parentage against defendant.

## II. The Divorce Decree

In February 1998, Julie Jones filed an action for divorce from Jeffrey Jones with the Orange Family Court. In the complaint for divorce, Ms. Jones alleged that Eric Jones, and his brother Evan Jones, were born of the marriage. In June 1998, a child support order was entered by the family court in the matter of *Jones v. Jones*. Jeffrey Jones was found to be the obligor for both children. On August 21, 1998, the family court issued a final order in the matter of *Jones v. Jones*, which was signed by Donald Hisey, assistant judge for Orange Country. The final order provided, in relevant part:

### PARENTAL RIGHTS AND RESPONSIBILITIES

1. The parties shall be granted shared legal rights and responsibilities for their minor children, Evan Parker Jones, d.o.b. July 24, 1996 and Eric M. Jones, d.o.b. May 16, 1997.

Within a short time after the final uncontested divorce hearing, plaintiff and Mr. Jones underwent genetic testing. As a result, plaintiff and Mr. Jones entered into an amended stipulation in which plaintiff acknowledged that Mr. Jones was not Eric's biological father, and relieved him of parental rights and responsibilities for Eric. Although the Joneses entered into the stipulation on September 29, 1998, and Julie Jones filed a complaint of parentage against defendant one day later, the Jones's original divorce judgment was not amended to reflect the stipulated agreement until December 4, 1998, more than ninety days after the original divorce order of August 21, 1998.

■ A trial court's jurisdiction to amend a divorce decree is ordinarily limited to the nisi period. *Downs v. Downs*, 150 Vt. 647, 647, 549 A.2d 1382, 1382 (1988) (mem.) (no jurisdiction to issue an amended

order after the decree had become absolute). In Vermont, the nisi period is three months from the entry of the order. 15 V.S.A. § 554. The nisi period for the Jones's divorce order expired in November 1998. After the expiration of the nisi period, the parties may move to alter or amend the judgment pursuant to 60(b) of Vermont's Rules of Civil Procedure. *Cameron v. Cameron*, 150 Vt. 647, 648, 549 A.2d 1043, 1043-44 (1988) (mem.). Rule 60(b) allows a party to obtain relief from a final judgment for reasons of, inter alia, mistake, newly-discovered evidence, and equitable considerations. V.C.R.P. 60(b). Neither party to the divorce sought to amend the original judgment order under either Rule 60(b) or 59(e).[1] Therefore, the December 4, 1998 amended order is a nullity.[2]

## III. Res Judicata

■ Although we accept defendant's view that the August 21, 1998 divorce order in *Jones v. Jones* was not properly amended, we do not agree that res judicata insulates defendant from a parentage action by plaintiff. First, defendant was not a party to the Jones's divorce action. See *Opland v. Kiesgan*, 594 N.W.2d 505, 510 n.7 (Mich. Ct. App. 1999) (putative father "cannot assert res judicata or collateral estoppel because he was not a party to or the privy of a party to the divorce action"); Annotation, *Effect, in Subsequent Proceedings, of Paternity Findings or Implications in Divorce or Annulment Decree or in Support or Custody Order Made Incidental Thereto*,78 A.L.R.3d 846, 852 (1977) ("[P]aternity findings or implications in a divorce decree . . . are not binding on a stranger to the divorce action in a later proceeding between the stranger and a husband or wife.").

■ Second, as defendant concedes in attacking the validity of the December 1998 "amended" final order, relief from the August 1998 original divorce judgment may be sought under V.R.C.P. 60(b). A direct attack on a judgment pursuant to Rule 60(b) cannot be barred on res judicata grounds. "The doctrine of 'res judicata does not preclude a litigant from making a direct attack [under Rule 60(b)] upon the judgment before the court which rendered it.'" *Dixon v. Pouncy*,

---

[1] Rule 59(e) requires a motion to alter or amend the judgment within 10 days after its entry. V.R.C.P. 59(e).

[2] Because we hold that the Jones's December 4, 1998 divorce order is a nullity, we need not reach defendant's claim regarding the assistant judge's jurisdiction to amend the order.

979 P.2d 520, 524 (Alaska 1999) (quoting 1B J. Moore, Moore's Federal Practice ¶ 0.407, at 931 (2d ed. 1973)).

█ Third, although defendant seeks refuge under the umbrella of our analysis in *Godin v. Godin*, 168 Vt. 514, 725 A.2d 904 (1998), this is not a case which implicates the principles which are the foundation of *Godin*. Significantly, there is not in the present case an established long-term paternal relationship of the type we sought to protect in *Godin*. In *Godin*, we held that a presumptive father could not disavow paternity six years after a divorce proceeding to which he was a party. *Id.* at 515, 725 A.2d at 905. In fact, all of our previous rulings on this issue, *Godin*, 168 Vt. at 523, 725 A.2d at 910, *St. Hilaire v. DeBlois*, 168 Vt. 445, 448, 721 A.2d 133, 136 (1998), and *Lerman v. Lerman*, 148 Vt. 629, 629, 528 A.2d 1121, 1122 (1987) (mem.), sought to ensure the financial and emotional security of paternal bonds in cases where the presumptive father had held himself out as the child's parent over a number of years. Indeed, all of the cases which defendant cites to support his position, with one exception, involve presumptive fathers attempting to disavow paternity years after divorce or parentage proceedings to which they themselves were a party. See *Godin*, 168 Vt. at 515, 725 A.2d at 905; *St. Hilaire*, 168 Vt. at 446, 721 A.2d at 134; *Lerman*, 148 Vt. at 629, 528 A.2d at 1122; *Hackley v. Hackley*, 395 N.W.2d 906, 913 (Mich. 1986); *A.K. v. S.K.*, 624 A.2d 36, 37-38 (N.J. Super. Ct. App. Div. 1993); *Richard B. v. Sandra B.B.*, 625 N.Y.S.2d 127, 128-29 (App. Div. 1995) (where presumptive father attempted to disavow paternity five months after divorce proceedings); *JRW & KB v. DJB*, 814 P.2d 1256, 1257-58 (Wyo. 1991).

This case does not present the specter of a "liberal reopening of paternity determinations," nor the instance of a parent seeking "for financial or other self-serving reasons" the dissolution of the parental bond. *Godin*, 168 Vt. at 524-25, 725 A.2d at 911-12. Neither are we confronted here with an action by a presumptive father to retroactively modify or annul child support obligations where, as we have noted, the underlying policy barring relitigation of paternity "applies with even greater force." *St. Hillaire*, 168 Vt. at 448, 721 A.2d at 136.

*Godin's* underlying policy has little force here. Defendant concedes that res judicata would not be a viable argument if the divorce judgment had been amended within the nisi period. We are confronted — not with a presumptive father attempting to avoid child support obligations or destroying a child's long-held assumptions in his own self-interest — but with a biological father's attempt to invoke a doctrine intended to serve the best interests of the child.

Under these circumstances, reversal is compelled not by public interest in the finality of paternity determinations, but by the legal complication occasioned by two conflicting family court determinations, each of which establishes a different obligor-father to support the same child.

It is from the failure to amend the original divorce judgment within the nisi period or to otherwise seek relief from judgment pursuant to V.R.C.P. 60(b) that complications from this case flow.[3] We cannot accept the trial court's characterization that this failure is merely a "form over substance type of issue" when the effect of the court's decision is to establish two conflicting family court determinations, each of which establishes a different obligor-father to support the same child.

*Reversed.*

**Dooley, J.,** concurring. I concur that the family court, acting through an assistant judge, improperly reopened the divorce judgment between plaintiff and her former husband after the expiration of the nisi period, and that res judicata does not prevent a motion for relief from judgment pursuant to Rule 60(b). Indeed, as I expressed in a dissent in *Godin v. Godin*, 168 Vt. 514, 533, 725 A.2d 904, 916 (1998), it is far preferable that the biological father bear the financial responsibility for the support of his child rather than the husband of the mother, who mistakenly believing he is the biological father, fails to protect his interest in the divorce proceeding.

We need, however, to step back and recognize the situation that *Godin* and this decision have created. The mother of the child now has the virtually unfettered choice whether to obtain child support from

---

[3] Rule 60(b)(5) permits relief from a final judgment when "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." V.R.C.P. 60(b)(5). Although we caution that in the context of paternity determinations relief from judgment pursuant to Rule 60(b)(5) will rarely be appropriate, see *Nancy Darlene M. v. James Lee M.*, 464 S.E.2d 795, 799 (W. Va. 1995), the inequitable prospective application clause of Rule 60(b)(5) may sometimes permit relief. *Dixon*, 979 P.2d at 526-27 (case remanded for determination as to whether request for relief from Rule 60(b)(5) was filed within a reasonable time, and if so, whether prospective application of the portion of the decree requiring ex-husband to support child is no longer equitable); *Ferguson v. State Dep't of Revenue*, 977 P.2d 95, 98 (Alaska 1999) (relief from an order pursuant to Rule 60(b)(5) may be appropriate when special circumstances demonstrate that it is "no longer equitable that the judgment have prospective application").

the biological father or her former husband, and there is no requirement that this decision be based on the best interest of the child. If, for example, the mother decides that her former husband's demands for visitation are unacceptable, she can disclose that he is not the biological father and bring a paternity action against the biological father. The paternity action will create the exact conflict that warrants relief from judgment in this case. I suspect that a stipulated relief from the divorce judgment will be granted as a matter or course if there is an outstanding parentage order against the biological father. Alternatively, the mother can conceal that there is a different biological father and pursue only her former husband for support. These are, of course, the facts of *Godin*.

I recognize that in the last few paragraphs of the majority decision is a suggestion that *Godin* applies only in limited circumstances, "where the presumptive father had held himself out as the child's parent over a number of years," 172 Vt. at 90, 772 A.2d at 505, and that the limitation makes it more fair. In fact, the attempt to limit *Godin* is a fiction. The only relevant period is that between the time of the divorce and the "presumptive" father's realization that he is not the biological father. If he brings a motion for relief from judgment within a year, see V.R.C.P. 60(b); V.R.F.P. 4(a)(1) (Rules of Civil Procedure apply to divorce actions except as otherwise provided), he has some chance of reopening the divorce judgment. Otherwise he does not, at least if the 60(b) motion is opposed.

In this case the marriage was short; the divorce filing came only a year after the birth of the child. That fact is, however, irrelevant to this decision. Even if the child were ten years old at the time of the divorce, the mother could bring this parentage action and require the biological father to support the child. Nothing in *Godin* limits its holding to short marriages or very young children.

The majority's choice of words magnifies the fiction. According to the majority's decision, the problem *Godin* addresses is that *"the presumptive father had held himself out as the child's parent."* 172 Vt. at 90, 772 A.2d at 505. The implication is that the presumptive father, knowing he is not actually the biological father, acts as the father anyway, creating some sort of estoppel. In fact, in each of the cases the majority cites, the presumptive father is misled into believing he is the biological father, and acts accordingly until he realizes the true facts. I reiterate my view, expressed in the *Godin* dissent, that the majority has built a policy around blaming the victim. *Godin*, 168 Vt. at 526, 725 A.2d at 912.

As we continue to explain the meaning and consequences of *Godin*, I hope the Legislature will recognize that the policy judgment underlying it is wrong and needs substantial modification. In all cases, biological fathers should have the obligation to support their children unless all parties involved knowingly and intentionally agree to a different financial arrangement. Creating a choice in the mother to seek support either from her ex-husband or from the biological father is neither fair to the ex-husband nor in the best interest of the child.