**Joan A. ROGERS v. Donald E. WELLS**

[808 A.2d 648]

No. 01-544

August 14, 2002. Father Donald Wells appeals from a decision by the Chittenden Superior Court enforcing the terms of a contract he entered with mother Joan Rogers Powell regarding parental rights and responsibilities for the parties' child. Father argues that the superior court was without jurisdiction to enforce the contract as mother's complaint properly belonged in family court, and that the court's interpretation of the contract was erroneous. Although we find that the superior court did have jurisdiction over mother's complaint, we agree that the

court erred in its interpretation of the agreement. Accordingly, we reverse and remand for a determination of any arrears owed by father.

The parties had one child, Robert, who was born in 1993. The parties did not marry. When their relationship ended, the parties entered into an agreement regarding parental rights and responsibilities. Both parties were represented by counsel, and signed the agreement in August 1995. The agreement divided up the parties' property, including a farmhouse and adjacent property on Poor Farm Road in Colchester, Vermont, which had served as the parties' primary residence during their relationship. That agreement stated in part:

> 9. Father will pay mother the sum of $1800.00 per month as child support for Robert and as father's contribution toward the expense of the Poor Farm Road residence for a period of five years from the date hereof. Father's $1800.00 per month payment shall be reduced to $800.00 per month upon the happening of any of the following: (1) mother's cohabitation with another; (2) mother's relocation; or (3) at the end of five years from the date hereof.

> a. Commencing in year six following the date of this Agreement, father shall pay mother the sum of $800.00 per month as child support for Robert; said support to be paid monthly until Robert graduates from high school so long as the parties are exercising parent-child contact as set forth . . . above.

This dispute centers on the amount of payments made in satisfaction of this clause. Father began making payments of $1800 in August 1995 until November 1996, when he reduced payment to $900, which continued until November of 1998. In response to this reduction, mother initiated an action in family court requesting that the court enforce the 1995 agreement. The family court declined to enforce the agreement for lack of jurisdiction because the parties had not married, although it did hold hearings to establish child support according to the statutory guidelines. Before hearings could be held, the court set $900 as the temporary child support amount. In September 1998, mother triggered one of the conditions of paragraph nine by marrying another man. In November 1998, after several days of hearings, the family court magistrate established a child support obligation for father of $154.76 per month. That order was not appealed. Father's payments from December 1998 until the present have been approximately $154 per month.

Mother filed the present action in superior court in January 1998 seeking, as she had in family court, enforcement of the terms of the agreement. Mother claimed that father had violated paragraph nine of the agreement by not paying the full $1800 until her marriage in 1998. She argued that the agreement provided that the $1800 and the reduced amount of $800 were undifferentiated between child support and a property settlement. Because part of the money owed her was to support the Poor Farm Road residence, she was entitled to receive the full amount (by then only $800). Father responded that he had complied with the agreement and that his reduction in payments was in response to a change in his financial circumstances, and mother's misrepresentations about her cohabitation. He also asserted that he was obligated to pay only the amount of child support as determined by the family court. The superior court agreed with mother, so far as it concluded that paragraph nine lumps together child support and property support without

differentiating the amount for each. The court concluded, however, that father was entitled to credit for the amount of child support as determined by the family court. Father appealed.

On appeal, father argues that the superior court was without jurisdiction to interpret the agreement, characterizing mother's superior court claims as an "anticipatory collateral attack" on a family court ruling. Father claims that because this case relates to child support, the suit is within the exclusive jurisdiction of the family court. Father further argues that even if the superior court has jurisdiction, its interpretation of the agreement was error. He contends that the court was required to determine what amount described in paragraph nine was child support and what amount was for support of the Poor Farm Road property. By concluding that the agreement lumped the two amounts together, the court did not fulfill its obligation to interpret the contract according to the plain language and the parties' intent.

The superior court properly had jurisdiction over this case. The superior court is the court of original jurisdiction over civil actions, while the family court has limited jurisdiction over particular matters including divorce and child support. Compare 4 V.S.A. § 113 (superior court jurisdiction) with id. § 454 (family court jurisdiction). We have acknowledged that the two courts do not have overlapping jurisdiction — matters that belong in family court may not be brought in superior court. St. Hilaire v. DeBlois, 168 Vt. 445, 447, 721 A.2d 133, 135 (1998). Apart and aside from the fact that mother brought a parentage action in family court seeking child support, the 1995 agreement is nothing more than a contract between two parties. Although the family court has exclusive jurisdiction over divorce proceedings, 4 V.S.A. § 454(4), there is no provision in the family court's jurisdiction for the separation of unmarried parties. Thus, to the extent that the parties negotiated for themselves an agreement on support and property division, that agreement is enforceable through civil action in the superior court. We find that the Chittenden Superior Court properly entertained mother's action for enforcement of the 1995 agreement.

We hold, however, that the court erred in its interpretation of the agreement. Absent ambiguity, contract interpretation is a matter of law. Morrisseau v. Fayette, 164 Vt. 358, 366, 670 A.2d 820, 826 (1995). Whether a contract is ambiguous is also a question of law. Isbrandtsen v. North Branch Corp., 150 Vt. 575, 577, 556 A.2d 81, 83 (1988). We therefore review the trial court's interpretation de novo. In determining that the 1995 agreement did not differentiate between child support and property settlement, the court focused on the language of paragraph nine. The court found that the phrase "as child support for Robert and as father's contribution toward the expense of the Poor Farm Road residence" unambiguously indicates the parties intended not to differentiate between the two purposes of the payment. In construing a specific provision of a contract, "we consider the whole instrument and construe it in harmony if possible" with the rest of the contract. John A. Russell Corp. v. Bohlig, 170 Vt. 12, 17, 739 A.2d 1212, 1216-17 (1999). While the court's interpretation may be accurate if we considered only the first part of paragraph nine alone, when analyzed with the rest of the agreement, we conclude that the parties did separate the child support amount from the property support amount.

Specifically, the court failed to consider paragraph 9a, which states that after five years, regardless of what conditions mother has triggered, father would pay mother $800 as child support until Robert graduates from high school. Considering this provision in conjunction with the provision in main paragraph

nine, it is apparent that the agreement allocated $1000 to support the Poor Farm Road residence and $800 to child support. There is nothing in the agreement that indicates that the amount of child support in paragraph 9a is any different from the amount of child support in paragraph nine. Furthermore, this interpretation of the contract accounts for the agreement's provision that father's contribution would fall to $800 should mother relocate or cohabitate with another within the first five years. Presumably, after either of these events, she would no longer need father's support to maintain the Poor Farm Road residence. Thus, father's contribution would be limited to child support. The parties intent, therefore, as evident from the plain language of the whole contract, is that father would provide child support and a form of maintenance to support mother's residence for five years, and then only child support until the child reached the age of majority.

Despite the parties agreeing to an amount of child support, $800, that would not change until Robert graduated from high school, the amount is modifiable. A court may modify child support whether it is based on a stipulation or agreement. See *C.D. v. N.M.*, 160 Vt. 495, 498, 631 A.2d 848, 850 (1993). Such authority comes from the policy expressed by the Legislature that children's needs should be met by having them share in family income. *Id.* at 500, 631 A.2d at 851 (citing 15 V.S.A. § 650). "The fact that a parent may have agreed, based on inadequate information, to an inappropriate child support amount should not undercut this policy." *Id.* Thus, there is no conflict between the superior court's jurisdiction over the 1995 agreement and the proceedings in family court that set child support according to the guidelines.

By the terms to the agreement, as a result of mother's marriage in September 1998, she was entitled to $800 of child support per month from that point for-

ward. The agreement was modified, however, by a family court order that set child support at $154.76. Because father's property support obligation of $1000 ended with mother's marriage in 1998, no part of the remaining $800 to which mother is entitled under the agreement is attributable to property support. The amount owed by father, therefore, is the amount of child support, which has been modified by the family court. Nevertheless, it does appear from the record that father prematurely reduced his payment to $900 before mother married. Thus, we remand to the superior court for a determination of arrears owed by father according to the terms of the agreement as set forth in this decision.

*Reversed and remanded.*