BENJAMIN FRANK CATHEY, Plaintiff v. ANN LEO CATHEY, Defendant

No. COA10-762

(Filed 1 March 2011)

**Divorce— alimony—obligation terminated—modification not allowed**

The trial court erred in a domestic action by awarding defendant alimony after plaintiff's alimony obligation had been previously terminated. Under previous North Carolina alimony statutes, the right to modify a lump sum alimony award that was ordered to be paid over a fixed term was limited to the time period during which the alimony was actually ordered.

Appeal by plaintiff from order entered 1 March 2010 by Judge Laura A. Devan in Cumberland County District Court. Heard in the Court of Appeals 15 December 2010.

*Lewis, Deese & Nance, LLP, by Renny W. Deese, for plaintiff-appellant.*

*Hedahl & Radtke, by Joan E. Hedahl, for defendant-appellee.*

CALABRIA, Judge.

Benjamin Frank Cathey ("plaintiff") appeals from the trial court's order which required him to pay $300.00 per month in alimony to Ann Leo Cathey ("defendant"). We reverse.

Plaintiff and defendant were married to each other on 2 September 1961. They remained married for thirty years until they separated on 2 September 1991. Plaintiff and defendant were subsequently divorced on 30 October 1992.

CATHEY v. CATHEY

[210 N.C. App. 230 (2011)]

On 30 August 1994, the Cumberland County District Court entered an equitable distribution order. The trial court ordered an unequal distribution. Defendant received, *inter alia*, twenty-five percent of plaintiff's military retirement. The trial court anticipated that defendant's share of plaintiff's retirement would be approximately $500.00 per month. On 21 November 1994, the trial court ordered plaintiff to pay defendant permanent alimony in the amount of $500.00 per month for a period of forty-two months. The trial court's order indicated that after these forty-two months of payments, plaintiff's permanent alimony obligation would terminate.

At the time of the equitable distribution judgment, plaintiff had a disability rating of 7%. In subsequent years, this rating continued to increase so that by 1 February 2005, the Department of Veterans Affairs had increased plaintiff's disability rating to 100%. As plaintiff's disability rating increased, plaintiff received an increase in the amount of his disability payments and a corresponding reduction in the amount of his retirement payments. Consequently, defendant's share of plaintiff's decreased retirement pay was gradually reduced to $125.50 per month.

On 16 September 2008, defendant filed a motion in the cause to either modify the equitable distribution order or modify the alimony order, due to the change in the parties' respective financial situations. After a hearing on defendant's motion, the trial court entered an order on 1 March 2010 that denied defendant's motion to modify the equitable distribution, but granted defendant's motion to modify alimony. The trial court awarded defendant permanent alimony of $300.00 per month beginning 1 September 2010. The new alimony award would terminate upon the death of either party or upon the remarriage of or cohabitation by defendant. Plaintiff appeals.

Plaintiff's sole argument on appeal is that the trial court erred by awarding defendant alimony after plaintiff's alimony obligations had been previously terminated. We agree.

The dispute in the instant case revolves entirely around the appropriate interpretation of the previous version of the alimony statutes, which was in effect at the time the original alimony order was entered on 21 November 1994.[1] "Questions of statutory interpre-

---

1. After the alimony award was entered, the General Assembly amended the statutes which governed alimony actions and made the amendments effective to actions filed on or after 1 October 2005. *See* 1995 N.C. Sess. Laws 319. Since the alimony action in the instant case was initiated prior to 1 October 2005, we limit the scope and application of our analysis to the previous alimony statutes.

tation are ultimately questions of law for the courts and are reviewed de novo." *In re Summons Issued to Ernst & Young, LLP*, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009) (internal quotations and citations omitted).

When the original alimony award was entered, N.C. Gen. Stat. § 50-16.1 defined alimony as "payment for the support and maintenance of a spouse, either in lump sum or on a continuing basis, ordered in an action for divorce, whether absolute or from bed and board, or an action for alimony without divorce." N.C. Gen. Stat. § 50-16.1 (1994). This definition did not expressly allow a trial court to award a specified amount of alimony that would be paid over a fixed period of time.[2] Nonetheless, our Courts still permitted a trial court to "award lump sum alimony for a specified period only." *Whitesell v. Whitesell*, 59 N.C. App. 552, 553, 297 S.E.2d 172, 173 (1982). Under this construction of the previous alimony statutes, "an award of alimony for a specified period only . . . [wa]s 'indubitably alimony in gross or "lump sum alimony." ' " *Id.* at 552, 297 S.E.2d at 173 (quoting *Mitchell v. Mitchell*, 270 N.C. 253, 257, 154 S.E.2d 71, 74 (1967)) (brackets omitted).

Modification of alimony under the previous alimony statutes was governed by N.C. Gen. Stat. § 50-16.9, which stated, in relevant part: "An order of a court of this State for alimony or alimony pendente lite, whether contested or entered by consent, may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested." N.C. Gen. Stat. § 50-16.9 (1994). Under this statute, an award of lump sum alimony for a specified period was subject to modification and termination prior to its payment in full, if the modification or termination occurred prior to the vesting of the last payment. *Potts v. Tutterow*, 114 N.C. App. 360, 365, 442 S.E.2d 90, 93 (1994), *aff'd per curiam*, 340 N.C. 97, 455 S.E.2d 156 (1995).

However, the motion to modify alimony in the instant case was not filed until several years *after* the lump sum alimony award ordered by the trial court had been paid in full. Our Courts have never directly addressed the question of whether, under the previous alimony statutes, modification of a lump sum award would be permissible under these circumstances. Nevertheless, the language of the previous alimony statutes and the holdings of our Courts inter-

---

2. N.C. Gen. Stat. § 50-16.3A (2009) now permits a trial court to award alimony "for a specified or for an indefinite term."

preting these statutes provide guidance on this issue and suggest that a dependent spouse whose alimony had either never existed or ceased to exist should no longer be entitled to alimony.

Under N.C. Gen. Stat. § 50-11 (1994), it was beyond the power of a trial court to enter an order awarding alimony after a judgment of absolute divorce, unless an alimony action was pending at the time of the absolute divorce judgment. *Mitchell v. Mitchell*, 270 N.C. 253, 258, 154 S.E.2d 71, 75 (1967); *Gilbert v. Gilbert*, 111 N.C. App. 233, 431 S.E.2d 805 (1993); *see also Baugh v. Baugh*, 44 N.C. App. 50, 52, 260 S.E.2d 161, 162 (1979) ("Although an order granting alimony may be modified, when a party has secured an absolute divorce, it is beyond the power of the court thereafter to enter a new order for alimony."). This was true even if the financial circumstances of the dependent spouse deteriorated significantly after the absolute divorce judgment.

In addition, our Supreme Court has held that the trial court's authority to modify an alimony award under N.C. Gen. Stat. § 50-16.9 upon a showing of changed circumstances includes the power to terminate alimony "absolutely." *Sayland v. Sayland*, 267 N.C. 378, 383, 148 S.E.2d 218, 222 (1966). An alimony award which is terminated absolutely must necessarily be terminated permanently and without restriction, as the word "absolute" is defined as "[f]ree from restriction, qualification, or condition" or "conclusive and not liable to revision." Black's Law Dictionary, 7 (9th ed. 2009). The trial court's power to terminate alimony absolutely would not be "absolute" if it were permitted, upon an appropriate showing of changed circumstances by the dependent spouse, to simply reinstate alimony months or years after termination. Moreover, there is no mechanism in the previous alimony statutes which would have allowed alimony to be reinstated after termination under any circumstances. Ultimately, reinstatement of previously terminated alimony would be the equivalent of ordering a new alimony award, which is impermissible under N.C. Gen. Stat. § 50-11 (1994).

Finally, under N.C. Gen. Stat. § 50-16.9(b) (1994), "[i]f a dependent spouse who is receiving alimony under a judgment or order of a court of this State shall remarry, said alimony shall terminate." There is nothing in this statute to suggest that a dependent spouse who remarries could later reinstate an alimony award under any circumstances. Consequently, under N.C. Gen. Stat. § 50-16.9(b), the remarriage of a dependent spouse permanently terminated alimony as a matter of law, and any change in the dependent spouse's financial circum-

stances after remarriage could not be used as a basis to reinstate the previous alimony award.

Defendant's situation does not differ substantially from that of a dependent spouse who was either not awarded alimony prior to the entry of an absolute divorce judgment or whose alimony was permanently terminated either by the trial court or by operation of law. As shown above, the prior alimony statutes provided no additional right to alimony or other protection for the dependent spouse whose alimony either never existed or ceased to exist, even if they were to later suffer an unexpected change of financial circumstances. While defendant's plight is unfortunate and sympathetic, she is still similarly situated to these other types of dependent spouses. As a result, there is nothing in the previous alimony statutes which would provide her with the right to be awarded additional alimony in the instant case.

Furthermore, "[t]he courts and the public are interested in the finality of litigation." *Hicks v. Koutro*, 249 N.C. 61, 64, 105 S.E.2d 196, 199 (1958). As the Vermont Supreme Court has noted, when faced with a question similar to that presented in the instant case,

" '[t]here is no area of law requiring more finality and stability than family law...' " *Hilaire v. DeBlois*, 168 Vt. 445, 448, 721 A.2d 133, 136 (1998) (quoting *Hackley v. Hackley*, 426 Mich. 582, 395 N.W.2d 906, 914 (Mich. 1986)). Once a divorce decree is final and the maintenance order has expired, neither the parties nor the court should be burdened by the inevitable uncertainty that would flow from a perpetually unresolved maintenance award.

*Arbuckle v. Ciccotelli*, 857 A.2d 324, 327 (Vt. 2004). In light of our interest in finality, the principles established by the previous alimony statutes, and the cases where our Courts have interpreted these statutes, we hold that, under our previous alimony statutes, the right to modify a lump sum alimony award that was ordered to be paid over a fixed term is limited to the time period during which the alimony is actually ordered. Modification, pursuant to N.C. Gen. Stat. § 50-16.9 (1994), can occur "at any time" before the award has been vested and satisfied. *Potts*, 114 N.C. App. at 365, 442 S.E.2d at 93. However, after the supporting spouse fulfills their obligation as ordered by the trial court, the original alimony award ceases to exist, and there is no longer an alimony award for the trial court to later modify.

In the instant case, defendant was originally awarded "the sum of $500.00 . . . for a period of forty-two months, at which time permanent

alimony will terminate." This award was subject to modification at any time prior to the vesting of the last payment due. However, after plaintiff paid the full amount ordered by the trial court, the alimony award was terminated by the express language of the trial court's order and thus ceased to exist. The trial court's "modification" of this non-existent award instead created a new award, which is forbidden by N.C. Gen. Stat. § 50-11 (1994). Thus, the trial court's order attempting to modify defendant's previously terminated alimony award was invalid.

In reaching this determination, we join the many other jurisdictions which have also considered the issue of whether a fixed term alimony award is subject to modification after it has been satisfied in full and concluded that it is not. *See, e.g., Banks v. Banks*, 336 So. 2d 1365 (Ala. Civ. App. 1976); *Mercer v. Mercer*, 641 P.2d 1003 (Idaho 1982); *Eckert v. Eckert*, 216 N.W.2d 837 (Minn. 1974); *Welke v. Welke*, 288 N.W.2d 41 (Neb. 1980); *Bellefeuille v. Bellefeuille*, 636 N.W.2d 195 (N.D. 2001); *Park v. Park*, 602 P.2d 1123 (Or. Ct. App. 1979); *Waddey v. Waddey*, 6 S.W.3d 230 (Tenn. 1999); *Arbuckle*, 857 A.2d 324; *Brown v. Brown*, 507 P.2d 157 (Wash. Ct. App. 1973); *Harshfield v. Harshfield*, 842 P.2d 535 (Wyo. 1992). As a result of our holding, the trial court's order requiring plaintiff to pay defendant $300.00 per month in alimony payments must be reversed.

Reversed.

Judges HUNTER, Robert C. and ELMORE concur.